NITON CORPORATION, Plaintiff,

v.

RADIATION MONITORING DEVICES, INC., Defendant.

No. Civ.A. 98–11629–REK.

United States District Court, D. Massachusetts.

Nov. 18, 1998.

Katherine L. Parks, James B. Conroy, Donnelly, Conroy & Gelhaar, Boston, MA, for Plaintiff.

Charles R. Bennett, Jr., Riemer & Braunstein, Boston, MA, for Defendant.

## Opinion

KEETON, District Judge.

Two innovative enterprises of modest size are coexisting almost side-by-side without friction. They are not in direct competition. Each, however, has possibilities for success and expansion. The success of both will, some months or years away, bring them to competing with each other and with larger entities whose operations may, by then, be international or global in scope.

Enter upon this tranquil scene the Internet and its inducements to each of the two modest enterprises to obtain web sites. They do so, and soon begin to worry about each other. As they learn more, one comes into a United States district court with a complaint and prayer for preliminary injunction against the other. They accept a suggestion from the judge that the request for injunctive relief be tried along with all other claims and defenses on an expedited discovery and trial schedule.

One soon learns, by chance, that the other's web sites and means of attracting Internet users to them are deceptive and immediately harmful. Forthwith, the matter is back before the district court with a renewed request for immediate intervention.

This is a classic illustration of a new kind of litigation for which nothing in past experience comes even close to preparing trial judges and the advocates appearing before them. But the case must be decided, and quickly, unless mediation within or outside court sponsorship produces an even quicker solution.

In the matter before me, I conclude that court intervention is appropriate but not in a classic form of preliminary injunction. For the reasons summarized here, my order is more provisional and tentative in nature and is entitled Preliminary Injunction Subject to Modification.

■ This way of proceeding is consistent with the principle that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[ ]." *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1978). *See also EEOC v. Astra USA, Inc.,* 94 F.3d 738, 744–46 (1st Cir.1996).

Plaintiff Niton Corporation is in the business of manufacturing and selling x-ray fluorescence ("XRF") instruments and software designed to detect the presence or absence of lead in paint. Defendant Radiation Monitoring Devices ("RMD") is in the business of manufacturing XRF instruments that detect lead in paint. One of these products is called the LPA–1. Niton's product employs the "L–Shell" and "K-shell" methods while RMD's product employs only the "K–Shell" method. By the time this civil action is commenced, Niton and RMD are aiming to sell to the same potential entities, in many instances, one or more of their respective products. Niton contends, and RMD denies, that the two companies are the only companies in the American market for XRF instruments and software.

■ In its complaint, Niton alleges that RMD uses false and misleading statements in RMD's advertising, marketing and promotion of its own product in Massachusetts and interstate commerce. Niton asserts that these statements "misrepresent the true nature, characteristics, capabilities, and qualities of RMD's product" and, as a result, reflect on Niton's products. Niton further contends that these misleading statements are contained on RMD's World Wide Web page on the Internet. These allegedly misleading statements include the following:

(1) "The LPA–1 is the ONLY instrument which measures lead without inconclusive values;"

(2) A report issued by the Midwest Research Institute ("MRI") "indicates that K–

Shell measurements are preferred for lead determination;" and

(3) "The [LPA–1] is the most effective lead inspection system available today."

Furthermore, Niton maintains that RMD has made false, misleading, and deceptive statements to third parties about Niton's products. RMD denies that it has made the following statements that the complaint alleges RMD has made:

(1) Niton's products produce inconclusive readings or ranges;

(2) Niton's products require the user to make subjective judgments in order to reach a 95% confidence level in determining the presence or absence of lead in paint, rather than relying on the instrument alone;

(3) Niton's products do not automatically display results as soon as a 95% confidence level determination is achieved;

(4) Niton's products require 120 seconds to make a determination;

(5) Niton's products are not recognized by the Environmental Protection Agency, the Department of Housing and Urban Development or the MRI as equal or superior to any other XRF lead paint analyzer; and

(6) The agencies listed in (5) above have reservations about the performance of Niton's products.

In response, RMD has filed in this civil action a counterclaim against Niton for using false and misleading statements in its advertising, marketing and promotion of Niton products.

As stated above, the two companies were involved in this litigation when Niton learned, by chance, that RMD's web sites and the means of attracting Internet users to the sites were deceptive and misleading. In an affidavit, a Niton employee in charge of maintaining Niton's Internet web site, Robert Bowley, asserts that, on November 5, 1998, he discovered that the "META" descriptions of RMD's web sites included references to Niton's home page that were unusual. The term "META description" refers to words that identify an Internet site, and the term "META" keywords refers to keywords that are listed by the web page creator when creating the web site. An Internet user then uses a web search engine that searches the "META" keywords and identifies a match or a "hit".

Upon further inspection of the "META" descriptions, Bowley found that several of the web addresses appeared to be for Niton's home page, but were actually for pages of RMD's web sites. Although no links to Niton were visible in the surface text of the RMD web sites, Bowley was able to use Netscape's "View Source" command to look at the source code for the RMD web sites.

Using this feature, Bowley discovered that the "META" descriptions of RMD's web sites were identical to those he had used when creating the Niton web site. Bowley discovered that several keywords, such as "radon", that were relevant to products Niton sold, but not to products sold or marketed by RMD, nevertheless appeared in RMD's web site source code.

After this discovery, Bowley asserts that he performed an Internet web search using the phrase "home page of Niton Corporation" and turned up several "hits". Only three of the "hits" were for pages on Niton's web site. The other five matches referred him to pages on RMD's web sites. According to Bowley and the copy of his search results marked as Exhibit B to Affidavit of Robert Bowley, Docket No. 13, the "META" description of the five RMD pages is "The Home Page of Niton Corporation, makers of the finest lead, radon, and multi-element detectors."

In his affidavit, Bowley states that he repeated the search for "home page of Niton Corporation" using several other web search engines and came up with the same results. Finally, Bowley asserts that he performed a search for "Niton Corporation" and "home page" and came up with hits that described themselves as being the "Home Page of Niton Corporation" but gave the web address of RMD's web site.

I find a likelihood of success of plaintiff in establishing before the finder of fact, at trial, the credibility of Bowley's findings recited here.

For the foregoing reasons, the Clerk is directed to enter forthwith on a separate document a Preliminary Injunction Subject to Modification in the form attached to this Opinion.

### Preliminary Injunction Subject to Modification

The court heard evidence and argument on November 13 and November 18, 1998 on Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (Docket No. 12, filed November 9, 1998), and considered supporting and opposing submissions, including affidavits (Docket Nos. 13, 14, 15, 16). On the basis of all the oral and filed submissions, the court finds: (a) that plaintiff has shown a likelihood of success on the merits of its contention that RMD's Internet web sites and means of attracting users of the Internet to examine these web sites have been used by RMD in a way likely to lead users to believe that the employees of RMD are "makers of the finest radon detectors," that RMD is also known as Niton Corporation, that RMD is affiliated with Niton Corporation, that RMD makes for Niton products marketed by Niton, and that RMD web sites are Niton web sites; (b) that plaintiff has shown irreparable harm because of the difficulty of proof of damages with reasonable certainty, despite the near certainty of substantial harm in fact; (c) that the balance of hardships favors plaintiff because of likely sales and sales growth that Niton would otherwise realize but for defendant's misuse of defendant's web sites; and (d) that the public interest is consistent with and will be served by the Order of the court stated below. For the reasons expressed here and orally at the hearings of November 13 and 18, 1998, it is ORDERED:

Defendant Radiation Monitoring Devices, Inc. ("RMD"), its officers, directors, agents, servants, employees, and those persons in active concert or participation with them who receive notice in fact of this Order are hereby enjoined from using RMD's Internet web sites and means of attracting users of the Internet to examine those web sites in a way that is likely to lead users to believe:

(1) that the employees of RMD are "makers of the finest radon detectors," or

(2) that RMD is also known as Niton Corporation, or

(3) that RMD is affiliated with Niton Corporation, or

(4) that RMD makes for Niton any product marketed by Niton, or

(5) that RMD web sites are Niton web sites.

This Order becomes effective upon plaintiff's filing with the Clerk a bond or other security in the amount of $10,000.

This Order thereafter continues in effect until modified by a further order of a judge of this or a higher court.

This Order is subject to modification by this court upon motion of an interested party for good cause shown.

RMD may, at any time, apply to this court for a modification of this Order upon a showing of good cause for determining that an alternative form of relief is more appropriate than an injunction. Such a showing of good cause may be made by RMD's showing that it has developed or proposes to develop a modification of its web sites and means of attracting users of the Internet to examine those web sites

(a) that, if practiced, would not be a violation of this order, or

(b) that would be a violation of the terms of this Order, absent modification, but for special reasons shown, an alternative form of remedy allowing RMD to proceed on specified conditions, including compensation or security to Niton against harm, is more appropriate than an injunction.