RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0111P (6th Cir.)
File Name: 03a0111p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

INTERACTIVE PRODUCTS
CORPORATION,
          *Plaintiff-Appellant,*

          *v.*                          No. 01-3590

A2Z MOBILE OFFICE
SOLUTIONS, INC., BRIAN LEE,
MOBILE OFFICE ENTERPRISE,
and DOUGLAS MAYER,
          *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00731—Sandra S. Beckwith, District Judge.

Argued: October 18, 2002

Decided and Filed: April 10, 2003

Before: BATCHELDER, COLE, and GIBBONS, Circuit
Judges.

─────────────────

### COUNSEL

**ARGUED:** Eric W. Guttag, SMITH, GUTTAG & BOLIN,
Mason, Ohio, for Appellant. Thomas P. Liniak, LINIAK,
BERENATO, LONGACRE & WHITE, Bethesda, Maryland,
James D. Liles, DINSMORE & SHOHL, Cincinnati, Ohio,
for Appellees. **ON BRIEF:** Eric W. Guttag, SMITH,
GUTTAG & BOLIN, Mason, Ohio, John J. Helbling,
Cincinnati, Ohio, for Appellant. Thomas P. Liniak, LINIAK,
BERENATO, LONGACRE & WHITE, Bethesda, Maryland,
James D. Liles, DINSMORE & SHOHL, Cincinnati, Ohio,
for Appellees.

─────────────────

### OPINION

─────────────────

JULIA SMITH GIBBONS, Circuit Judge. This case
presents a novel trademark issue with regard to the Internet
along with several other more straightforward issues.
Interactive Products Corporation ("IPC") brought this action
alleging, among other things, federal and state claims of
trademark infringement, false designation of origin, false
advertising and trademark dilution. IPC's claims arise
primarily out of the fact that defendant a2z Mobile Office
Solutions, Inc. ("a2z") maintains an Internet web page that
contains IPC's trademark in its URL.[1] IPC also complains
about a particular message that appeared for about a year on
a2z's web page regarding IPC's trademarked product.

The district court granted summary judgment in favor of
defendants on all of IPC's claims, and IPC appeals with
regard to certain of its claims. IPC also appeals the district

───────────────

[1]We define below several terms relating to the Internet, including
"URL."

court's award of defendants' attorneys' fees and expenses incurred in opposing IPC's motion to compel the depositions of defendants' attorneys. Also before this court is the motion of defendants Mobile Office Enterprise ("MOE") and Douglas Mayer for sanctions against IPC for bringing a frivolous appeal as to them.

Because the district court reached the correct result in granting summary judgment in favor of defendants on all of IPC's claims, we affirm that decision. We also affirm the district court's decision regarding the magistrate judge's award to defendants of expenses incurred in opposing plaintiff's motion to compel. We deny defendants MOE and Mayer's motion for sanctions against IPC.

## I. RELEVANT TECHNOLOGY

Resolution of the legal issues presented in this case requires a basic understanding of the Internet.[2] The Internet is a global network of interconnected computers that allows individuals and organizations around the world to communicate and to share information with one another. The Web, a collection of information resources contained in documents located on individual computers around the world, is the most widely used and fastest-growing part of the Internet except perhaps for electronic mail ("e-mail"). *See United States v. Microsoft*, 147 F.3d 935, 939 (D.C. Cir. 1998). Prevalent on the Web are multimedia "websites." A website consists of at least one, and often many interconnected, "web pages." Web pages are computer data files written in Hypertext Markup Language ("HTML") that contain information such as text, pictures, sounds, and audio and video recordings. Web pages also

---

[2]The following discussion is largely derived from *Brookfield Communications Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999), and *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, No. C96-2703, 1997 WL 811770 (N.D. Cal. Dec. 18, 1997), where the courts considered issues similar to the issues presented in this case.

usually contain connections ("hyperlinks") to other web pages on the website and other websites altogether.

Each website has a corresponding domain name, which is an identifier somewhat analogous to a telephone number or street address. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1318 (9th Cir. 1998). Domain names consist of a second-level domain – simply a term or series of terms (*e.g.*, a2zsolutions) – followed by a top-level domain, many of which describe the nature of the enterprise. Top-level domains include ".com" (commercial), ".edu" (educational), ".org" (non-profit and miscellaneous organizations), ".gov" (government), ".net" (networking provider), and ".mil" (military). *See id.* at 1318-19. Commercial entities generally use the ".com" top-level domain, which also serves as a catchall top-level domain. *See id.* A website's domain name (*e.g.*, a2zsolutions.com) signifies its source of origin and is, therefore, an important signal to Internet users who are seeking to locate web resources. Because of the importance of a domain name in identifying the source of a website, many courts have held that the use of another's trademark within the domain name of a website can constitute a trademark violation. *See, e.g., PACCAR Inc. v. Telescan Tech. LLC*, 319 F.3d 243, 250 (6th Cir. 2003) (citing cases).

Each web page within a website has a corresponding uniform resource locator ("URL") (*e.g.*, a2zsolutions.com/desks/floor/laptraveler/dkfl-lt.htm), which consists of a domain name and a post-domain path. A post-domain path (*e.g.*, /desks/floor/laptraveler/dkfl-lt.htm) merely shows how a website's data is organized within the host computer's files.

Using a web browser, such as Microsoft's Internet Explorer, a cyber "surfer" may navigate the Web – searching for, communicating with, and retrieving information from various websites. *See Microsoft*, 147 F.3d at 939-40, 950. A specific website is most easily located by entering its domain name into the browser. *See Panavision*, 141 F.3d at 1327. Upon

entering a domain name into the web browser, the corresponding website's "homepage" will appear on the computer screen. Sometimes, however, a web surfer will not know the domain name of the site he seeks. In that case, the surfer has two principal options: to guess the domain name or utilize an Internet "search engine."

An Internet user will often begin by guessing the domain name, especially if there is an obvious domain name to try. Web users often correctly assume that the domain name of a particular company's website will be the company name followed by ".com." Guessing domain names, however, is not always successful. The web surfer who assumes that "X.com" will always correspond to the website of company X will sometimes be misled. *See, e.g., Panavision*, 141 F.3d at 1319 (finding that defendant's use of the website "panavision.com" to post photographs of the City of Pana, Illinois, violated the trademark rights of Panavision, International, L.P.)

A web surfer's second option when he does not know the domain name is to use an Internet search engine. When a keyword is entered, the search engine processes it to generate a (sometimes long) list of web pages (ideally relating to the entered keyword). Each search engine uses its own algorithm to search for and arrange web pages in sequence, so the list of web pages that any particular set of keywords will bring up may differ depending on the search engine used. *See Niton Corp. v. Radiation Monitoring Devices, Inc.*, 27 F.Supp.2d 102, 104 (D. Mass. 1998). Search engines usually look for keywords in places such as domain names, actual text on the web page, and metatags.[3] Metatags are hidden HTML code intended to describe the contents of the web page. On many search engines, the more often a term appears in the metatags of a particular web page, the more likely it is that the web

---

[3] According to plaintiff's expert witness, "the path name does not bias a search engine."

page will be "hit" in a search for that keyword and the higher on the list of "hits" the web page will appear. *See Niton*, 27 F.Supp.2d at 104.

## II. BACKGROUND FACTS

The facts are largely undisputed. The principals in this case are Mark Comeaux, president of plaintiff Interactive Products Corporation ("IPC"), defendant Brian Lee, president of defendant a2z Mobile Office Solutions, Inc. ("a2z"), and defendant Douglas Mayer, president of defendant Mobile Office Enterprise, Inc. ("MOE"). Each of the parties in this case is involved in either the manufacture or sale of portable computer stands for use in automobiles. The portable computer stands provide a means to secure a laptop computer in a moving vehicle and yet provide availability and convenience of use from the driver's seat (hopefully while the car is at rest).

In 1994, Mayer and Comeaux co-founded IPC, through which they developed and sold a portable computer stand called the Lap Traveler. "Lap Traveler" is a federally registered trademark of IPC. Defendant a2z sells mobile computer accessories through its Internet website. Between 1996 and 1998, a2z sold the Lap Traveler on its website at the Internet URL "a2zsolutions.com/desks/floor/laptraveler/dkfl-lt.htm."

In 1998, Comeaux and Mayer had a disagreement, followed by a state court lawsuit in which Comeaux sought dissolution of IPC. In December 1998, Comeaux and Mayer entered into a settlement agreement to resolve Comeaux's dissolution petition. Under the settlement agreement, Comeaux agreed to purchase all of Mayer's shares of stock in IPC for $33,000. The agreement further provided that:

> 6. The parties agree that the right to use the "Lap Traveler" name and model designations, and the names and model designations of all other IPC products marketed at any time prior to the execution of the

agreement, is and shall remain the exclusive property of IPC. Mayer ... shall have no right to use these product names or model designations.

7. Mayer, Comeaux, and IPC shall all have the right to manufacture, market and sell products similar to or identical to the Lap Traveler products currently marketed by IPC, including but not limited to the Lap Traveler.... Mayer shall not be entitled to use the Lap Traveler name or model designations in connection with such sales and marketing, although he and Comeaux shall each be entitled to claim that they were jointly the inventor of Lap Traveler products.
...
10. The parties shall be free to compete with one another in the future, including solicitation, marketing and sales to any current or future clients or business prospects of IPC without restriction. The parties shall be free to use any vendors, manufacturing suppliers and subcontractors, commissioned or non-commissioned sales people currently employed by Comeaux, IPC or Mayer.

The terms of the settlement agreement do not require any party to keep the agreement confidential.

Also in 1998, the relationship between Comeaux and Lee, the president of a2z, became strained. In January 1999, Comeaux terminated the business relationship between IPC and a2z and instructed Lee to remove references to the Lap Traveler from a2z's website.

After parting with Comeaux and IPC, Mayer, through MOE, began manufacturing and selling a portable computer stand called The Mobile Desk. After Comeaux instructed a2z to cease selling the Lap Traveler, a2z replaced the Lap Traveler on its website with the Mobile Desk. The Mobile Desk is now advertised and sold on the same web page from which a2z formerly advertised and sold the Lap Traveler. The Internet URL for this web page remains

"a2zsolutions.com/desks/floor/laptraveler/dkfl-lt.htm" ("a2z's portable-computer-stand web page"); this portable-computer-stand web page is one of the web pages accessible from ("linked to") a2z's website.

Throughout 1999, a2z posted the following message (the "Announcement"), or slight variations, on its portable-computer-stand web page:

> Important Announcement about the
> Lap Traveler Product.
> The original Lap Traveler was co-developed by
> Doug Mayer and his ex-partner. They have split.
> a2z carries the redesigned and improved product –
> The Mobile Desk™

Mayer had provided Lee with a copy of the settlement agreement between Mayer and Comeaux, and Lee used the agreement as a guide in drafting the Announcement. The Announcement was removed from the a2z website in December 1999.

In August 1999, Comeaux performed several web searches on the Internet using "LAPTRAVELER" as the keyword on various web search engines. The searches consistently resulted in showing a2z's portable-computer-stand web page as one of the listed hits.

### III.  PROCEDURAL HISTORY

On September 13, 1999, IPC filed an eight-count complaint against Lee, a2z, Mayer and MOE, asserting violations of the federal Trademark Act, the Lanham Act, the Ohio Deceptive Trade Practices Act, and the common law of the state of Ohio. Counts I through V and count VIII are related to a2z's use of the term "laptraveler" in the post-domain path of the URL for a2z's portable-computer-stand web page and the allegedly misleading nature of the Announcement. MOE's and Mayer's alleged liability under these counts is apparently premised on an agency or aider and abettor theory, although this theory is

not clearly articulated in the complaint. Counts VI and VII assert breach of contract claims based on Mayer's providing Lee with a copy of the settlement agreement between Mayer and Comeaux.

More specifically, count I asserts a claim for infringement under the Trademark Act, 15 U.S.C. § 1114(1). Count II asserts a claim under the Lanham Act, 15 U.S.C. § 1125, for false designation of origin and for false or misleading advertising. Count III asserts a claim for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c). Counts IV and V assert parallel state law claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02, and the common law of Ohio. Count VI appears to allege that Mayer breached the settlement agreement by allowing a2z to use the Lap Traveler trademark on its website. Count VII alleges that Lee, a2z, and MOE induced Mayer into breaching the settlement agreement. Count VIII alleges that defendants' alleged improper use of the Lap Traveler trademark tortiously interfered with IPC's existing and prospective business relationships. The complaint seeks injunctive relief along with compensatory and punitive damages.

After discovery ended, defendants a2z and Lee and defendants MOE and Mayer filed motions for summary judgment as to each count of the complaint. On April 23, 2001, the district court issued an order granting both motions in part, dismissing with prejudice IPC's federal claims and parallel state claims and declining to exercise supplemental jurisdiction over IPC's remaining state law claims. IPC appeals only the grant of summary judgment on certain of its federal claims and parallel state claims. Specifically, IPC appeals the grant of summary judgment on counts I, II, IV and V of its complaint.

## IV.  ANALYSIS

### A.  Likelihood of confusion

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). Similarly, to succeed on a false designation of origin claim, a plaintiff must show that the false designation creates a "likelihood of confusion." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998). Furthermore, claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act and Ohio common law are subject to the same "likelihood of confusion" standards as their federal counterparts. *See Daddy's Junky Music*, 109 F.3d at 288. Therefore, to succeed on any of its trademark claims at issue in this appeal, IPC must show that the presence of its trademark in the post-domain path of a2z's portable-computer-stand web page is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.[4]

The district court found that IPC had failed to present evidence sufficient to create a genuine issue of fact that consumers are likely to be confused by the presence of IPC's trademark in the post-domain path of a2z's portable-computer-stand web page. Therefore, the district court granted summary judgment in favor of defendants on IPC's trademark claims. We review the district court's grant of summary judgment *de novo*. *See id.* at 279-80.

---

[4]In addition to trademark infringement (count I and parts of counts IV and V) and false designation of origin (parts of counts II, IV and V), IPC asserted a claim for trademark dilution (count III), a claim which does not require a showing of likelihood of confusion. IPC, however, has not appealed the district court's dismissal of its trademark dilution claim.

In typical trademark cases, a court should determine whether a likelihood of confusion exists by examining and weighing the following factors: 1) the strength of the senior mark; 2) relatedness of the goods and services; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) likely degree of purchaser care; 7) the intent of the defendant in selecting the mark; and 8) the likelihood of expansion of the product lines. *Id.* at 280. The district court examined these eight factors in the present case. As this court has cautioned before, however, "[e]ach case presents its own complex set of circumstances and not all of these factors may be particularly helpful in any given case." *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). The factors are only useful to the extent they assist in determining whether a likelihood of confusion exists. "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.*

In the usual trademark case, the defendant is using a mark to identify its goods that is similar to the plaintiff's trademark. For instance, in *Daddy's Junky Music*, this court considered a case where the plaintiff sold musical instruments under the trademark, "Daddy's Junky Music Stores," while the defendant sold musical instruments from its retail store, "Big Daddy's Family Music Center." The district court had determined that there was no likelihood of confusion between the marks of the parties, but this court reversed after weighing each of the eight factors and determining that there was a likelihood of consumer confusion. Applying the eight factors is useful to determine likelihood of confusion in typical cases such as *Daddy's Junky Music* where there is not any question that the defendant is using the challenged mark to identify its goods. In such a case, it makes sense to consider such things as the similarity of the marks and the relatedness of the goods and services identified by those marks.

If, for instance, the present case involved a situation where a2z and MOE were selling a portable computer stand called "The Lap Travel Stand," then this would be a typical trademark case where the eight factors would be helpful in determining whether defendants' use of this mark would likely cause confusion with IPC's "Lap Traveler" trademark. In this case, however, the product defendants are selling is called "The Mobile Desk," a trademark not at all similar to IPC's "Lap Traveler" trademark. IPC, of course, is not challenging defendants' use of the mark "The Mobile Desk" to identify their competing product; instead, IPC is challenging the presence of its trademark, "laptraveler," in the URL post-domain path of the web page from which defendants are selling the Mobile Desk product.[5]

Therefore, in this case, there is a preliminary question about whether defendants are using the challenged mark in a way that identifies the source of their goods. If defendants are only using IPC's trademark in a "non-trademark" way – that is, in a way that does not identify the source of a product – then trademark infringement and false designation of origin laws do not apply. *Cf. New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) (holding that infringement laws "simply do not apply" to a "non-trademark use of a mark").

The evidence shows that a2z did not *insert* the mark "laptraveler" into the URL of its portable-computer-stand web page while selling the Mobile Desk. When a2z substituted the Mobile Desk product for the Lap Traveler product, it simply never changed the post-domain path name of its web page. Answering a question about why "laptraveler" appears in the URL, Lee testified, "Because that's the way my directory path was set up." The record does not indicate why

---

[5]In the context of this case, there is no meaningful distinction between "Lap Traveler" and "laptraveler." *See, e.g.*, *Public Serv. Co. v. Nexus Energy Software, Inc.*, 36 F.Supp.2d 436 (D. Mass. 1999) (finding "Energy Place" and "energyplace.com" to be virtually identical).

a2z did not change the post-domain path name of its web page once it stopped selling the Lap Traveler, but Lee did testify that making such a change would be "not terribly" difficult. Nevertheless, there is not any evidence in the record that a2z left "laptraveler" in its URL path intending to confuse or mislead anyone. The web page itself clearly and prominently marks the product being sold as "The Mobile Desk."

The ultimate issue in this case, however, is not defendants' intent, but whether the presence of "laptraveler" in the URL post-domain path for a2z's portable-computer-stand web page is likely to cause confusion among consumers regarding the origin of the Mobile Desk product. Stated another way, the issue is whether a consumer is likely to notice "laptraveler" in the post-domain path and then think that the Mobile Desk may be produced by the same company (or a company affiliated with the company) that makes the Lap Traveler.

To answer this question, it is helpful to review "the basic objectives of trademark law," which the United States Supreme Court has described as follows:

> In principle, trademark law, by preventing others from copying a source-identifying mark, "reduce[s] the customer's costs of shopping and making purchasing decisions," for it quickly and easily assures a potential customer that *this* item – the item with this mark – is made by the same producer as other similarly marked items that he or she liked (or disliked) in the past. At the same time, the law helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product. ... It is the source-distinguishing ability of a mark ... that permits it to serve these basic purposes.

*Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 163-64 (1995) (citations omitted).

Apparently, the present case marks the first time a circuit court has considered the issue of whether the presence of another's trademark in the post-domain path of a URL violates trademark law. Several courts have considered the issue of whether the use of another's trademark in one's website domain name violates trademark law, and the answer is usually that such use is a violation. *See, e.g.*, *PACCAR, Inc. v. TeleScan Tech. LLC*, 319 F.3d 243 (6th Cir. 2003) (holding that defendant's use of domain names such as "peterbilttrucks.com" and "kenworthnewtrucks.com" violated plaintiff's trademark rights in the marks "Peterbilt" and "Kenworth"); *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036 (9th Cir. 1999) (holding that the defendant's use of the domain name "moviebuff.com" violated plaintiff's trademark rights in the mark "MovieBuff"). But these courts have all relied on the fact that domain names usually signify source. As we recently stated, "[w]ords in many domain names can and do communicate information as to the source or sponsor of the web site." *PACCAR*, 319 F.3d at 250; *cf. Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 627-28 (6th Cir. 1998) (Merritt, concurring) (noting that a domain name does not always act as a trademark and stating, "When a domain name is used only to indicate an address on the Internet and not to identify the source of specific goods and services, the name is not functioning as a trademark.").

The post-domain path of a URL, however, does not typically signify source. The post-domain path merely shows how the website's data is organized within the host computer's files. *See Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, No. C96-2703, 1997 WL 811770, at *4 n.6 (N.D. Cal. Dec. 18, 1997). Typically, web pages containing post-domain paths are not reached by entering the full URL into a browser; instead, these secondary pages are usually reached via a link from the website's homepage, which does not contain a post-domain path. For example, a consumer wanting to purchase a Lap Traveler product would probably not enter "a2zsolutions.com/desks/floor/laptraveler/dkfl-lt.htm" into a browser. The consumer would more likely enter

"LapTraveler.com," which would bring the consumer to IPC's website, which sells the Lap Traveler. If a consumer were generally looking for portable computer stand products, the consumer might look at a general retailer's website, such as a2zsolutions.com. If the consumer were to go to a2zsolutions.com, the consumer would find a link entitled "The Mobile Desk™ Computer Stand," which if double-clicked would bring the consumer to a2z's portable-computer-stand web page selling The Mobile Desk.

The only two cases that address the issue presented here are *Patmont Motor Werks* and *PACCAR, Inc. v. Telescan Tech. LLC*, 115 F.Supp.2d 772 (E.D. Mich. 2000), *affirmed in part and vacated in part on a different ground by* 319 F.3d 243 (6th Cir. 2003). In *Patmont Motor Werks*, the District Court for the Northern District of California held that the defendant's use of the plaintiff's trademark in the post-domain path of one of the defendant's web pages did not violate trademark law. 1997 WL 811770, at *4, n.6. The plaintiff was a maker of small, motorized scooters, which it sold under the trademark "Go-Ped." The defendant owned and operated a website (www.idiosync.com), which resold the Go-Ped product from one of its secondary web pages (www.idiosync.com/goped). The plaintiff asserted that the presence of its trademark in the post-domain path of one of the defendant's website's web pages violated trademark law. The court, however, found "as a matter of law that such use does not suggest [the plaintiff's] sponsorship or endorsement, because the Go-Ped mark did not appear in the website's 'domain name.'" *Id.* The court went on to explain that a "website's domain name signifies its source of origin" but that the post-domain path "serves a different function" and does not signify source of origin. *Id.*

In *PACCAR, Inc.*, the District Court for the Eastern District of Michigan seemingly endorsed the practice of using another's trademark in a web page's post-domain path. In discounting the potential harm to the defendant of enjoining defendant's use of the plaintiff's trademarks ("Peterbilt" and

"Kenworth") in defendant's websites' domain names, the court cited *Patmont Motor Werks* and suggested that the defendant could instead use the plaintiff's trademarks in post-domain paths. 115 F.Supp.2d at 780 (citing *Patmont Motor Werks* and stating, "Moreover, some authority suggests that the use of trademarks in the post-domain path of a URL is acceptable.").

IPC attempts to distinguish *Patmont Motor Werks* and *PACCAR* by noting that each of these two cases involved a defendant who was reselling the plaintiff's product on its website. Therefore, IPC argues, the defendants in those cases were simply making references to trademarked goods offered for sale by the alleged infringer. Neither of these two cases, however, relied on this fact in determining that the use of another's trademark in a post-domain path is not a violation of trademark law. The district court in *Patmont Motor Werks* based its finding in this regard solely on the fact that a post-domain path does not signify source and therefore cannot act to confuse regarding source. 1997 WL 811770 at *4-5, n.6.[6] And the district court in *PACCAR* simply cited *Patmont Motor Werks* without further analysis. 115 F.Supp.2d at 780. Furthermore, there is no basis to conclude that a defendant's reselling of the plaintiff's product on its web page would decrease the probability that the defendant's post-domain path use of plaintiff's trademark would confuse a consumer regarding the source of the website. If anything, it would

---

[6] In determining that the defendant's use of the plaintiff's trademark in the text of its website was not a violation of trademark law, the court in *Patmont Motor Werks* did rely on the fact that the defendant was simply making necessary use of the mark to refer to the plaintiff's product. 1997 WL 81170, at *3-4 (relying on the "nominative fair use" doctrine as outlined in *New Kids*, which protects a defendant's "reasonably necessary" use of a plaintiff's trademark when the defendant is referencing the plaintiff's product). The court, however, did not rely on this reasoning in making its decision regarding the use of the mark in the post-domain path, and it would have been difficult for the court to find that the defendant's use of the plaintiff's trademark in its post-domain path was a "reasonably necessary" use.

seem that the defendant's marketing of the plaintiff's product on its web page would increase the likelihood that a consumer may think that the defendant is associated with the plaintiff.

Because post-domain paths do not typically signify source, it is unlikely that the presence of another's trademark in a post-domain path of a URL would ever violate trademark law. For purposes of the present case, however, it is enough to find that IPC has not presented any evidence that the presence of "laptraveler" in the post-domain path of a2z's portable-computer-stand web page is likely to cause consumer confusion regarding the source of the web page or the source of the Mobile Desk product, which is offered for sale on the web page.[7]  Therefore, the district court correctly granted summary judgment in favor of defendants on IPC's trademark claims.  Moreover, because there is not any evidence that the post-domain path of a2z's portable-computer-stand web page signifies source, it was unnecessary for the district court to examine the eight factors traditionally used to determine likelihood of confusion between two source-signifying marks.

## B.   False advertising

IPC claims that the Announcement and the slight variations of the Announcement that appeared on a2z's website throughout 1999 constitute actionable false advertising under

---

[7]IPC also complains that a2z's portable-computer-stand web page is listed as one of the hits when one does an Internet search for the term "laptraveler."  IPC's own expert, however, testified that "the path name does not bias a search engine."  In addition, IPC has offered no proof that defendants did anything nefarious to cause search engines to hit a2z's web page when searching for "laptraveler."  For instance, IPC does not present any evidence that defendants referenced "laptraveler" in the metatags of a2z's portable-computer-stand web page.  *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812-13 (7th Cir. 2002) (holding that the defendant's reference to the plaintiff's trademark in the metatags of the defendant's web page was a violation of trademark law).  The record does not contain any evidence that explains why a2z's web page is hit when performing an Internet search for "laptraveler."

the Lanham Act, 15 U.S.C. § 1125(a) (part of count II), as well as Ohio's equivalent statute, O.R.C. § 4165.02(A) (part of count IV).  With regard to a claim for false advertising, this court has stated as follows:

> When a plaintiff seeks an award of monetary damages for false or misleading advertisement under the Lanham Act, he may show either that the defendant's advertisement is literally false or that it is true yet misleading or confusing. Where statements are literally false, a violation may be established without evidence that the statements actually misled consumers. Actual deception is presumed. Where statements are literally true, yet deceptive, or too ambiguous to support a finding of literal falsity, a violation can only be established by proof of actual deception (*i.e.*, evidence that individual consumers perceived the advertisement in a way that misled them about the plaintiff's product).  A plaintiff relying upon statements that are literally true yet misleading 'cannot obtain relief by arguing how consumers could react; it must show how consumers actually do react.' In addition, a Lanham Act claim must be based upon a statement of fact, not of opinion.

*American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999) (citations omitted).

In the district court, IPC argued that the Announcement was misleading, even if it was literally true.  As the district court correctly found, however, IPC failed to submit any competent evidence of actual deception.  Recognizing this failure, IPC now focuses its argument on the assertion that the Announcement is literally false.  This argument also fails.

We review the district court's grant of summary judgment *de novo*.  The first challenged statement contained in the Announcement is that "[t]he original Lap Traveler was co-developed by Doug Mayer and his ex-partner." IPC argues

that this statement is false "because Mayer and Comeaux were not partners, but were instead shareholders in and officers of IPC, i.e., IPC is not a partnership but a corporation." No reasonable juror could conclude that the Announcement was using the term "partner" in its legal sense to distinguish the relationship from a corporation. The common meaning of "partner" when used in this context is "business associate," and Mayer and Comeaux were close business associates. Interestingly, in oral argument in front of the magistrate judge on a motion to compel, IPC's counsel summarized this case by stating, "We're dealing with two former partners on an intellectual property issue, which is basically almost a case of first impression." During the same oral argument, IPC's counsel identifies Mayer as "a former partner of our client."

The next challenged statement in the Announcement is that Comeaux and Mayer "have split." IPC argues that this statement is false "because, in actuality, Mayer resigned from and left IPC (i.e., there was no 'splitting' of partners or a partnership, and IPC, itself, did not 'split')." Again, no reasonable juror could conclude that the Announcement was using the term "split" in some legal sense to distinguish the situation from an officer resigning from a corporation. To say that Comeaux and Mayer "split" is not false.

IPC lastly challenges the statement in the Announcement that "a2z carries the redesigned and improved product – The Mobile Desk™." IPC argues that this statement "necessarily implies that 'The Mobile Desk' is the 'redesigned and improved' Lap Traveler product which it is not." As the district court correctly held, calling the Mobile Desk "redesigned and improved" is mere puffery which is not actionable under the Lanham Act. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496-97 (5th Cir. 2000). It is undisputed that Mayer was involved in the design of the Lap Traveler and that Mayer later developed a competing product with a different design called The Mobile Desk. The Announcement's suggestion that the redesign is improved is

mere opinion, which is not actionable under the Lanham Act. *See American Council of Certified Podiatric Physicians & Surgeons*, 185 F.3d at 614.

## C.  Discovery dispute

During the course of discovery, IPC moved "for leave" to take the depositions of counsel for defendants. IPC based this motion on the allegations that during the breaks in IPC's deposition of a2z's president, defendants' counsel had inappropriate conversations with the witness and that during the deposition, defendants' counsel were signaling answers to the witness. The magistrate judge denied IPC's motion, which the judge appropriately characterized as a motion to compel, on three grounds: 1) counsel for IPC failed to attempt to resolve the discovery dispute extrajudicially prior to filing the motion as required by local rules; 2) the record failed to support a claim of misconduct; and 3) the information sought in the motion could have been obtained by other means. The magistrate judge then granted defendants' motion for the recovery of reasonable expenses of defending the motion, including attorneys' fees.

IPC objected to the magistrate judge's order, but the district court overruled IPC's objection after it "reviewed the entirety of Mr. Lee's deposition transcripts and the circumstances surrounding the conversations with Mr. Lee" and found "no factual support for Plaintiff's claim of attorney misconduct." Furthermore, the district court found that "because Plaintiff's motion was not substantially justified, the Court agrees with [Magistrate] Judge Sherman's decision that an award of attorney's fees and costs is appropriate. *See* Fed. R. Civ. P. 37(a)(4)(B)."

IPC now appeals the district court's order overruling IPC's objection to the magistrate judge's award of fees and expenses to defendants. IPC argues that the award was inappropriate because defendants did not comply with the safe harbor provision of Rule 11 of the Federal Rules of Civil

Procedure. Nothing in the record, however, suggests that defendants' request for expenses was pursuant to Rule 11. IPC advances this argument for the first time on appeal and did not make any related argument to the district court.

This court reviews decisions of a district court regarding discovery matters, including awarding attorneys' fees, under an abuse of discretion standard. *Bill Call Ford, Inc. v. Ford Motor Company*, 48 F.3d 201, 209 (6th Cir. 1995). Abuse of discretion means that the appellate court is left with "a definite and firm conviction that the court below committed a clear error of judgment." *Id.*

As the district court makes clear in its order, the award was granted pursuant to Rule 37(a)(4)(B) of the Federal Rules of Civil Procedure, not Rule 11. Rule 37(a)(4)(B) provides that if a motion to compel discovery is denied, the court "shall, after affording an opportunity to be heard, require the moving party or the attorney filing the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust." In its reply appellate brief, IPC argues that Rule 37 does not apply to this situation because its motion was "for leave" to depose defendants' counsel, not a motion "to compel" the depositions. IPC cites no authority for this hair-splitting argument.

In affirming the magistrate judge, the district court did not abuse its discretion in determining that IPC's motion was properly characterized as a motion to compel. In addition, the district court did not abuse its discretion in determining that IPC's motion was not "substantially justified," and, therefore, the district court appropriately affirmed the magistrate judge's order directing IPC to reimburse defendants for their fees and expenses in opposing the motion pursuant to Rule 37(a)(4)(B).

## D. Sanctions

Rule 38 of the Federal Rules of Appellate Procedure provides:

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

MOE and Mayer argue that this appeal is frivolous as to them because IPC has offered no evidence that either of them is responsible for the alleged trademark violations, which all arise out of a2z's website – a website over which MOE and Mayer claim to have no control. Moreover, MOE and Mayer argue that IPC's appeal of the award of expenses relating to the attempted deposition of defendants' counsel was wholly without merit and was brought solely for the purpose of delaying the payment of the award.

IPC responds that it has presented evidence and advanced legal arguments which show that MOE and Mayer are vicariously liable for the acts of a2z. IPC cites a draft e-mail prepared by the president of a2z, which identifies a2z as "an authorized agent" of Mayer, the president of MOE. In addition, IPC cites the Supreme Court case, *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, which states:

> [L]iability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another. Even if a manufacturer does not directly control others in the chain of distribution, it can be held responsible for their infringing activities under certain circumstances. Thus, if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is

contributorially responsible for any harm done as a result of the deceit.

456 U.S. 844, 854 (1982).

In *Wilton Corp. v. Ashland Castings Corp.*, this court thoroughly discussed the issue of when it is appropriate to impose Rule 38 sanctions on an appellant, and in that case we concluded that sanctions were appropriate:

> [t]hough we find this appeal to have been filed without delay or bad faith, we do find it to be wholly without merit. We conclude that this appeal involved an issue already "clearly resolved," that it was "insubstantial," and the plaintiff's arguments essentially had no reasonable expectation of altering the district court's judgment based on law or fact.

188 F.3d 670, 676-78 (6th Cir. 1999) (citations omitted).

IPC's appeal raises a novel issue regarding whether the presence of another's trademark in a web page's URL post-domain path violates trademark law. Furthermore, IPC has advanced at least a colorable (even if ultimately unpersuasive) argument, based on Supreme Court precedent, that MOE and Mayer would be vicariously liable if the court were to find a2z's web page to be in violation of trademark law. Therefore, IPC's appeal of the district court's summary judgment in favor of MOE and Mayer was not frivolous.

IPC's appeal of the award of defendants' fees and expenses in opposing IPC's motion to compel, however, was frivolous. IPC advances senseless arguments on this issue that had no reasonable chance of success. Significantly, however, counsel for MOE and Mayer devoted only three and a half pages of their thirty-four page appellate brief to respond to IPC's frivolous arguments in favor of reversing the award of fees and expenses. We decline to exercise our discretion to sanction IPC because we find that, on the whole, IPC's appeal was not frivolous.

## V.  CONCLUSION

For all the foregoing reasons, we affirm the district court's decision in its entirety, and we deny MOE and Mayer's motion for sanctions.