RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0086p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WYSONG CORPORATION,

                          *Plaintiff-Appellant*,

           *v.*

APN, INC. (17-1975); BIG HEART PET BRANDS and
J.M. SMUCKER COMPANY (17-1977); HILL'S PET
NUTRITION, INC. (17-1978); MARS PETCARE US, INC.
(17-1979); NESTLÉ PURINA PETCARE COMPANY (17-
1980); WAL-MART STORES, INC. (17-1981),

                          *Defendants-Appellees*.

> Nos. 17-1975 /1977 /1978 /1979
> /1980 /1981

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:16-cv-11821; 2:16-cv-11823; 2:16-cv-11825; 2:16-cv-11826;
2:16-cv-11827; 2:16-cv-11832—Matthew F. Leitman, District Judge.

Decided and Filed:  May 3, 2018

Before:  DAUGHTREY, STRANCH, and THAPAR, Circuit Judges.

---

## COUNSEL

**ON BRIEF:**  Wesley W. Barnett, DAVIS & NORRIS, LLP, Birmingham, Alabama, for
Appellant.  H. Woodruff Turner, Curtis B. Krasik, Christopher M. Verdini, K&L GATES LLP,
Pittsburgh, Pennsylvania, for Appellee in 17-1975.  Ronald Y. Rothstein, WINSTON &
STRAWN LLP, Chicago, Illinois, Steffen N. Johnson, WINSTON & STRAWN LLP,
Washington, D.C., for Appellees in 17-1977.  Jonathan D. Hacker, O'MELVENY & MEYERS,
Washington, D.C., Richard B. Goetz, Carlos M. Lazatin, O'MELVENY & MYERS, Los
Angeles, California, Hannah Y.S. Chanoine, Brandon D. Harper, O'MELVENY & MYERS,
New York, New York, for Appellee in 17-1978.  John J. Dabney, Mary D. Hallerman,
MCDERMOTT WILL & EMERY LLP, Washington, D.C., for Appellee in 17-1979.  Carmine
R. Zarlenga, MAYER BROWN LLP, Washington, D.C., Jonathan E. Lauderbach, WARNER
NORCROSS & JUDD, LLP, Midland, Michigan, Keri E. Borders, Dale J. Giali, MAYER
BROWN LLP, Los Angeles, California, Thomas W. Thagard, James C. Lester, Birmingham,

Alabama, for Appellee in 17-1980.  Erin M. Pawloski, Edward H. Pappas, DICKINSON WRIGHT PLLC, Troy, Michigan, Elliot H. Scherker, Brigid F. Cech Samole, Katherine M. Clemente, Miami, Florida, for Appellee in 17-1981.

————————————————

**OPINION**

————————————————

THAPAR, Circuit Judge.  This case is about pet-food packaging.  One pet-food seller, the Wysong Corporation, claims that six of its competitors have been deceiving consumers.  How?  Here is an example:





According to Wysong, this package is misleading.  The bag features a photograph of a delicious-looking lamb chop—but Wysong says the kibble inside is actually made from the less-than-appetizing "trimmings" left over after the premium cuts of lamb are sliced away.  The same goes for more than three hundred of the Defendants' other packages, which feature photos of delectable chicken breasts, T-bone steaks, and salmon filets.  Wysong claims that this purportedly deceptive marketing is tricking people into purchasing the Defendants' products.

The district court dismissed Wysong's suits for failure to state a claim, and we now review those decisions de novo. *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 792 (6th Cir. 2015). The question is whether Wysong's complaints contain factual allegations that, when accepted as true, set out plausible claims for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

I.

Each of Wysong's amended complaints asserts one cause of action: false advertising under the Lanham Act. To win, Wysong ultimately would have to show that the Defendants (1) made false or misleading statements of fact about their products, (2) which actually deceived or had a tendency to deceive a substantial portion of the intended audience, and (3) likely influenced the deceived consumers' purchasing decisions.[1] *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999). There are two ways to make this showing, and Wysong tries both.

*Route One: Literally False.* The first way to prevail on a Lanham Act false-advertising claim is to show that the defendant's advertising communicated a "literally false" message to consumers. *Id.* at 614. This is the preferred route for Lanham Act claimants, since courts presume that consumers were actually deceived upon a showing of literal falsity. *Id.*

Wysong claims the Defendants' messaging is literally false because the photographs on their packages tell consumers their kibble is made from premium cuts of meat—when it is actually made from the trimmings left over after the premium cuts are gone. The problem for Wysong is that only an "unambiguously" deceptive message can be literally false. *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 737 (6th Cir. 2012) (citation omitted). And surely a reasonable consumer could understand the Defendants' packaging as indicating the *type of animal* from which the food was made (*e.g.*, chicken) but not the precise *cut* used (*e.g.*, chicken breast). Wysong's literal-falsity argument thus fails. *See id.*

---

[1] A Lanham Act claimant must also show a link to interstate commerce and a causal link between the false advertising and his own injury. 15 U.S.C. § 1125(a). Neither of these elements is at issue on appeal.

*Route Two: Misleading.*   The second way to prevail on a false-advertising claim is to show that the defendant's messaging was "misleading," even if not literally false. *Am. Council*, 185 F.3d at 614. To prevail on this theory, however, the claimant must prove that a "significant portion" of reasonable consumers were *actually* deceived by the defendant's messaging. *Id.* at 616. Lanham Act claimants usually do so with consumer surveys. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:193 (5th ed. 2017). At the motion-to-dismiss stage, in the absence of such surveys, we ask whether the facts in the complaint support a plausible inference that the challenged advertisements in fact misled a significant number of reasonable consumers. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Am. Council*, 185 F.3d at 614 (discussing how to establish a Lanham Act claim at the judgment-as-a-matter-of-law phase). "[J]udicial experience and common sense" are our guides. *Iqbal*, 556 U.S. at 679.

The facts in Wysong's complaints do not support a plausible inference that the Defendants' packaging caused a significant number of reasonable consumers to believe their pet food was made from premium lamb chops, T-bone steaks, and the like. *See Am. Council*, 185 F.3d at 614. Those complaints alleged (1) that contemporary pet-food consumers prefer kibble made from fresh ingredients like those they would feed their own families, and (2) that the Defendants' packaging tricked those consumers into thinking their kibble was in fact made from such ingredients. They also included hundreds of pictures of the purportedly duplicitous advertising. Yet, as the district court noted, Wysong's complaints did not explain *how* the photographs are supposed to have misled consumers in light of the whole context of the challenged advertisements. And that is a problem.

Why? Because reasonable consumers know that marketing involves some level of exaggeration—what the law calls "puffery." Courts thus view Lanham Act claims challenging hyperbolic advertising with a skeptical eye. *See, e.g., Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 699 (6th Cir. 2003) ("[M]ere puffery . . . is not actionable under the Lanham Act."). This is especially so where, as here, the challenged practice seems to be industry standard. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 498 n.8 (5th Cir. 2000). Think, for instance, of the reasonable consumer at the fast-food drive-through. Does he expect that the hamburger he receives at the window will look just like the one pictured on the

menu?  Of course not.  He knows that puffery is a fact of life.  The same is true here.  Without more facts and explanation than Wysong's complaints provide, it is not plausible that reasonable consumers believe most of the (cheap) dog food they encounter in the pet-food aisle is in fact made of the same sumptuous (and more costly) ingredients they find a few aisles over in the people-food sections.  Wysong's allegations thus fail to nudge its theory of deception "across the line from conceivable to plausible."  *See Twombly*, 550 U.S. at 570.

Wysong responds that consumers would not think the Defendants' packaging was puffery because some pet foods, such as Wysong's, *do* contain premium-quality ingredients.  Thus, Wysong figures, it is not implausible that reasonable consumers believe what they see in the pictures: that the Defendants' pet food is made from high-quality meats.  But Wysong's amended complaints are too threadbare to support the inferences it asks us to pile on here.  Even given that some pet foods contain premium ingredients, the court is left to wonder how that fact impacts consumer expectations.  Are these premium sellers even known to the Defendants' intended audience?  Do their products compete with the Defendants', or do they cater to a niche market?  Are there obvious ways consumers can distinguish between the Defendants' products and the fancier brands?  Wysong does not say.  Neither does Wysong explain why the packages' ingredient lists, themselves pictured in Wysong's complaints, do not dispel the photographs' allegedly misleading effects.  Contrary to Wysong's suggestion that the packages proclaim the Defendants' pet food is made from premium cuts, many of their packages list various kinds of animal "meal" or "by-product" as an ingredient.  *See Pernod Ricard USA, LLC v. Bacardi USA, Inc.*, 653 F.3d 241, 253 (3d Cir. 2011) (advertisement was not misleading where potentially misleading impression created by one part of the label was dispelled by statements to the contrary elsewhere on the label).  And that information certainly suggests that the kibble is not made entirely from chicken breasts and lamb chops.

In sum, as the district court rightly held, *context matters*.  Both the relevant market and the products' labeling are crucial in evaluating plausibility, but Wysong said next to nothing about them.  And that is fatal here, since the puffery defense is such an obvious impediment to Wysong's success.  *See Twombly*, 550 U.S. at 556–57 (holding that plaintiff was required to place allegations in context to survive motion to dismiss in light of "prior rulings" that posed

obvious obstacles for plaintiff's theory). Even drawing all reasonable inferences in Wysong's favor, the fact remains: The Defendants' product is *dog food*. Common sense dictates that reasonable consumers are unlikely to expect that dog food is made from the same meat that people eat. Wysong's complaints did not plead enough facts or provide enough context to make a plausible case to the contrary.

II.

Upon dismissal, the district court denied Wysong leave to amend its complaints. Wysong now argues that in so doing, the court abused its discretion.[2]

Once again context matters. After three of the Defendants filed their initial motions to dismiss, the district court instructed the parties to confer so that Wysong might fix the deficiencies in its complaints. After those conferences, Wysong filed amended complaints against all six defendants. The court then considered another round of motions to dismiss and held a three-hour hearing. Accordingly, upon dismissal, the district court denied Wysong a second round of amendments. In its order, the court explained that it was denying leave, first, because Wysong was on notice about the deficiencies in its complaints and yet made few changes in its first round of amendments; also because the Defendants had spent significant time and money preparing and arguing two rounds of motions to dismiss; and, finally, because the court had expended considerable judicial resources in considering 300-plus pages of briefing and holding a three-hour motions hearing.

These reasons were sufficient to justify denial of leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 n.2 (6th Cir. 2017) ("Where parties have fully argued the merits of a 12(b)(6) motion to dismiss and the district court has . . . issued an opinion resolving the motion, it is a stretch to say justice requires granting leave to cure the complaint's deficiencies as identified in the adversarial pleadings and the district court's order[.]"). As the district court noted, the purpose of allowing

---

[2]Wysong also argues that it was entitled to amend as of right under Federal Rule of Civil Procedure 15(a)(1). But Wysong never raised that argument below, and issues "raised for the first time on appeal are not properly before this Court." *Kusens v. Pascal Co.*, 448 F.3d 349, 368 (6th Cir. 2006).

Wysong a first round of amendments was to give it a chance to add facts and context that might nudge its complaints across the plausibility threshold, "not to provide [it] with constructive criticism regarding how to save those claims through yet another" amendment. When Wysong failed to do so, the district court did not abuse its discretion by refusing another bite at the apple.

***

We **AFFIRM**.