NATIONAL DISTILLERS PRODUCTS
CORPORATION et al. v. K. TAYLOR
DISTILLING CO., Inc.

No. 1197.

District Court, E. D. Kentucky.

Feb. 24, 1940.

D. L. Hazelrigg and Louis Cox, both of Frankfort, Ky., and Breed, Abbott & Morgan, Edward S. Rogers, and Gerald J. Craugh, of New York City, for plaintiffs.

Leslie W. Morris and Marion Rider, both of Frankfort, Ky., S. S. Yantis, of Lexington, Ky., and Sanford H. Cohen, of New York City, for defendant.

FORD, District Judge.

The parties to this litigation are corporations engaged in the business of making and selling whiskey. Their respective places of business are located in Kentucky. The plaintiff, National Distillers Products Corporation, was organized in 1924 under the laws of Virginia and the Old Taylor Distillery Company, Incorporated, a Maryland corporation, is its wholly owned subsidiary. The defendant, the K. Taylor Distilling Company, Incorporated, was organized under the laws of the State of Delaware in August 1933.

The plaintiffs seek an injunction to restrain the defendant from using as a part of its corporate name or in connection with its business the names "K. Taylor", "Kenner Taylor", "The K. Taylor Distilling Company" or any other name of which the word "Taylor" forms a part, on the ground that such use of those names or either of them constitutes unfair competition with the plaintiffs and infringement of plaintiffs' trade marks "Old Taylor" and "E. H. Taylor, Jr. & Sons". The plaintiffs also seek from the defendant an accounting for the profits realized from its alleged wrongful conduct and for the damages sustained by plaintiffs thereby.

For more than fifty years before his death in 1923, E. H. Taylor, Jr., was engaged in the distillation and sale of straight Kentucky Bourbon whiskey. His distilleries were located in Franklin County, Kentucky, and the adjacent county of Woodford. In 1887 he formed a partnership with his two sons, J. S. Taylor and Kenner Taylor, under the firm name of E. H. Taylor, Jr. & Sons. By that time his fame as a distiller of fine Bourbon whiskey had become widespread, and the whiskey produced by his firm and sold under the trade name of "Taylor" and "Old Taylor" gained rapidly in popularity.

In the panic of 1893, the firm encountered financial difficulties and the partnership, as well as the individual partners, made general assignments for the benefit of their creditors.

In 1894, E. H. Taylor, Jr., and his sons, J. S. and Kenner, organized a corporation under the name of "E. H. Taylor, Jr. & Sons". Soon thereafter their corporation acquired the distillery plant and all other assets of their former partnership and resumed the manufacture and sale of whiskey under the brands "Taylor" and "Old Taylor". It appears that after 1910 the single word "Taylor" was seldom, if ever, used as the brand name, but thereafter the words "Old Taylor" and the script signature of the corporation "E. H. Taylor, Jr. & Sons" appeared conspicuously upon all labels and in all the advertising matter of the corporation.

For many years and at great expense the corporation extensively advertised its product under its brand name "Old Taylor" especially in the principal business centers of the United States. The result was that "Old Taylor" whiskey became celebrated on the American market as a Bourbon whiskey of superior quality. It is estimated by the witness, Edmund W. Taylor, a younger son of E. H. Taylor, Jr., who came into the business some years after the organization of the corporation, that up to 1923, approximately fifty million bottles of "Old Taylor" whiskey were produced and sold by the corporation. The word "Taylor" came into such general use by a large part of the trade and the purchasing public, in referring to the whiskey produced by E. H. Taylor, Jr. & Sons, that it acquired a "secondary meaning" descriptive of and identifying that particular product. G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369. That at some time in the past, to the insignificant extent shown in this record, a few small producers of whiskey for a limited time used the name "Taylor" in connection with their products, does not negative the fact that a secondary meaning ultimately became definitely attached to the name, denoting the whiskey produced by E. H. Taylor, Jr. & Sons. Clark Thread Co. v. Armitage, C.C., 67 F. 896. Recognition of this secondary meaning which thus became attached to the name "Taylor" and an effort to exploit it to defendant's advantage is found in a brochure which defendant had published and circulated in 1935 entitled "Taylor-Made Whiskies". In this advertisement, the defendant prominently displayed the pictures of E. H. Taylor, Jr., and two of his sons who were associated with him in his business, accompanied with the inscription "The True Significance of the Name Taylor", followed by the statement, "The name of Taylor has long been the symbol of the finest Kentucky Bourbon that money can buy."

Soon after the death of E. H. Taylor, Jr., all of the stock owned by the members of his family in the corporation, "E. H. Taylor, Jr. & Sons", was sold. Through a series of transactions, the details of which are immaterial here, the ownership of the assets and business of the Taylor corporation, including its trade names, trade marks and good will, passed to and became the property of the plaintiff, National Distillers Products Corporation, the present owner thereof. The other plaintiff, the Old Taylor Distillery Company, owns none of these assets and has disclosed no interest in or right to any of the relief herein sought. It is really nothing more than a name under which the National Distillers Products Corporation produces and distributes its Old Taylor whiskey. All references hereinafter made to the plaintiff relate solely to National Distillers Products Corporation.

Among the assets purchased from E. H. Taylor, Jr. & Sons was a large quantity of "Old Taylor" whiskey in storage. Notwithstanding the sale and distribution of such whiskey was for a time limited by National Prohibition to medicinal purposes, the sales of "Old Taylor" whiskey by plaintiff and its predecessors, in the period from December 1, 1927, to the repeal of National Prohibition in 1933, aggregated more than $2,000,000. Since the repeal of National Prohibition, the plaintiff and its predecessors have expended large sums in advertising "Old Taylor" whiskey, and the aggregate sales from 1933 to May 31, 1937, amounted to more than $3,000,000.

The brand name "Old Taylor" was never abandoned by the plaintiff or its predecessors, as is contended by the defendant, but its whiskey has been continuously on the market under that name to the present time.

In 1933, several months before the repeal of National Prohibition, S. S. Yantis, of Lexington, Ky., and several associates including his relative, F. S. Yantis, of New York, a member of the firm of F. S. Yantis & Company, Investment Brokers, became interested in a former distillery site located near Forks of Elkhorn in Franklin County, Ky., and it was purchased by them with the view of promoting an enterprise for the manufacture of whiskey in the event of the repeal of National Prohibition, which seemed impending. On August 23, 1933, they organized the defendant corporation under the corporate name of "Franklin County Distilling Company" and the corporation took over the title to the property. At that time, Mr. Kenner Taylor, who had been actively associated with his father and brothers in the manufacture and sale of "Old Taylor" whiskey for approximately thirty years, was living in Frankfort, Ky. He was about seventy years of age. Since the sale of his interest in the corporate assets of E. H. Taylor, Jr. and Sons in 1923, he had engaged in

no active business pursuits, but had recently expressed to several friends, in view of the prospect of the repeal of National Prohibition, his desire and purpose to again engage in his former business. His intimate knowledge of the business derived from long experience as the superintendent of the Old Taylor Distillery was a valuable asset and he was well and favorably known in that field of industry. S. S. and F. S. Yantis, being entirely without previous experience in the distillery business, were seeking the services of a man with such experience and qualifications to head their new enterprise. After failing in their efforts to interest two other prominent former distillers, they got in touch with Mr. Taylor. They had several conferences, as the result of which they reached an agreement which was reduced to writing on September 27, 1933. By the terms of the contract, Mr. Taylor agreed to at once accept the presidency of the new corporation and to perform all the duties of its chief executive officer in the direction and conduct of its affairs for a period of five years at a salary of $5,000 per annum. His salary was to begin when the distillery was put in operation. There was the further provision that he was to receive such additional compensation "as may be justified by the earnings and such as shall be determined and declared by the board of directors." The contract gave Mr. Taylor the option to purchase, at any time within five years, ten thousand (10,000) shares of the common capital stock of the corporation or any part thereof at the price of $2.50 per share and the corporation obligated itself to hold that amount of its stock available for him and subject to his call. The corporation was to equip, furnish and maintain an office in the city of Frankfort for his use and occupancy in the performance of his duties as its president and to provide such subordinate officers and employees as might be necessary for the conduct and operation of the corporate business under his direction. As a part of the consideration of the contract, Mr. Taylor agreed that at its election the corporation might use his personal name in its corporate name and, subject to his approval as to manner and method, his name might be used by the corporation in branding and advertising its product.

At a meeting of the board of directors, held on October 13, 1933, Mr. Taylor was elected president and director of the corporation and a resolution was passed rec

ommending to the stockholders that the corporate name be changed from the "Franklin County Distilling Company" to "The K. Taylor Distilling Company". The change of name was promptly accomplished through appropriate action by the stockholders. An office was provided and equipped for Mr. Taylor's use and he assumed his official position and duties with the corporation. He presided at and participated in numerous meetings of the board of directors held at the office in Frankfort during the months of October, November and December 1933. These meetings were largely occupied with matters affecting the organization and financing of the company, the selection of its operating personnel, the issuance and qualifying of its stock for sale in various states and numerous other matters such as ordinarily precede the active operation of such corporate enterprises.

Following his custom of many years to spend a part of his winters in Florida, Mr. Taylor went to Florida for his usual winter vacation on December 28, 1933. Although his health was not good, during his sojourn in Florida he kept in touch with the corporate affairs of defendant by correspondence, approved the use of his name upon certain labels and in general manifested a normal interest in the plans and progress of the corporation. When he returned from Florida on April 1, 1934, he was quite ill and his health continued to decline to such an extent that he was never able to leave his house after his return. He died on June 1, 1934.

Neither Kenner Taylor nor his estate ever exercised the option to take stock in the defendant. So far as the record shows, no other person by the name of Taylor has ever had any interest in or connection with the defendant at any time.

After Kenner Taylor's death, defendant made an effort to induce his brother, Edmund W. Taylor, to become its nominal president and to permit the defendant to use his name in its business, but the proposal was declined.

No whiskey was made by the defendant during Kenner Taylor's lifetime, although before his death and with his approval the defendant purchased whiskey from other distillers and marketed it under the label "Kenner Taylor".

Defendant's distillery was put in operation and began making whiskey in March 1935, and it began advertising its product

under the brand "Kenner Taylor". It now sells its whiskey under the brands "Kenner Taylor" and "K. Taylor". In July 1935, the defendant distributed to the public ten thousand (10,000) rather colorful and attractive brochures entitled "Taylor-Made Whiskies". These ornate pamphlets contained the pictures of E. H. Taylor, Jr., and two of his sons who were associated with him in his business, and comments upon their connection with the establishment of the reputation of the name "Taylor" as a symbol of fine Kentucky whiskey, to which reference has already been made. This advertising was wholly devised and put into circulation after Kenner Taylor's death. It evidences a deliberate purpose and design on the part of the defendant to secure the benefit of the good will and reputation which, through many years of effort and expense on the part of the plaintiff and its predecessors, had been built up for "Taylor" and "Old Taylor" whiskies. In numerous other ways the defendant so emphasized the name "Taylor" and the phrase "Taylor-Made Whiskies" in its advertisements and labels as to give them a natural tendency to mislead and deceive the public into thinking that the defendant was the successor of or had some close connection with the producer of "Old Taylor" whiskies, and to pass off defendant's product as that of E. H. Taylor, Jr. & Sons or its successors.

■ Although the defendant's labels, in many respects, are distinctly dissimilar to those used by plaintiff and its predecessors, the name "Taylor" had become so associated with the product of plaintiff and its predecessors that the mere attaching of that name by the defendant to a similar product, even when preceded by the name "Kenner" or the initial "K", tended to create confusion and misunderstanding among the ordinary purchasing public and clearly constituted unfair competition. Walter Baker & Co. v. Slack, 7 Cir., 130 F. 514.

■ Among the assets which the plaintiff, National Distillers Products Corporation, acquired from E. H. Taylor, Jr. & Sons, was the right to use the trade names "Taylor" and "Old Taylor" in connection with its business of distilling and selling whiskey, but the right to the use of such a personal name is not susceptible of exclusive appropriation as against other persons of that name. However complete may have become the secondary significance of the name as descriptive or indicative of the product of the plaintiff and its predecessors, the right of any other person of the same name to its reasonable, honest and fair use in his own business or for any other legitimate purpose was not thereby diminished. Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247; Singer Manufacturing Co. v. June Manufacturing Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S. Ct. 609, 49 L.Ed. 972.

■ Neither by his deed of assignment nor by participation in the conveyances by which the assets, trade names, trade marks or good will of the partnership, of which he was a member, or the corporation, of which he was a stockholder, did Kenner Taylor divest himself of his personal right to fairly, honestly and reasonably make use of his own name "Kenner Taylor" or his family name "Taylor" in his business or for any other legitimate purpose. Howe Scale Co. v. Wyckoff, Seamans & Benedict, supra; Piggly Wiggly Corp. v. Saunders, D.C., 1 F.2d 572; Mattingly v. Stone, 12 S.W. 467, 12 Ky.Law Rep. 72; Id., Ky., 14 S.W. 47, Helmbold v. Helmbold Manufacturing Co., 53 How.Prac., N.Y., 453.

Although Kenner Taylor never actually became a stockholder of the defendant corporation, he owned an option upon a substantial amount of its capital stock at a fixed price which he had the exclusive right to exercise for a period of five years. He was its chief executive officer and, by the contract of September 27, 1933, was entitled not only to a fixed salary for his services as soon as the making of whiskey was started but also to share in the profits. The evidence is convincing that the contract between Kenner Taylor and the defendant was not a mere colorable device designed for the accomplishment of a fraudulent purpose. Regardless of whatever doubts we may entertain as to its propriety, it was not an illegal transaction. Mr. Taylor thereby acquired a bona fide pecuniary interest in the business of the defendant sufficiently substantial to enable him to lawfully confer upon the defendant the right to use his personal name in connection with its business. L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S. Ct. 91, 59 L.Ed. 142. If the law of the State were otherwise, it would be controlling, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R.

1487, but I have found no expression by the Court of Appeals of Kentucky to the contrary. The opinion of the Circuit Court of Appeals of the Sixth Circuit in the case of National Distilling Co. v. Century Liquor & Cigar Co., 183 F. 206, and that of Judge Cochran in the case of Bissell Chilled Plow Works v. T. M. Bissell Plow Co., C.C., 121 F. 357, were rendered before that of the Supreme Court in the Waterman case, supra.

The untimely death of Mr. Taylor, which deprived him of the enjoyment of the fruits of his contract, did not divest the defendant of or vitiate any rights which it lawfully acquired under the contract during his lifetime. But long before this transaction took place, the product of the plaintiff and its predecessors had acquired a recognized reputation for superior quality under the Taylor name. Its goods had long been identified and distinguished by the name "Old Taylor". Under such conditions, honesty and fair dealing on the part of the defendant demanded that, in the use of the same name on a similar product, it be employed in such a manner as would not be reasonably calculated to represent to ordinary purchasers that defendant's goods were the product of the plaintiff or its predecessors, or to convey to the public the impression that defendant was the successor to E. H. Taylor, Jr. & Sons or otherwise connected with the manufacture of the well known brand of whiskey known as "Old Taylor". Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 28 S. Ct. 350, 52 L.Ed. 616. As Judge Coxe, of the Southern District of New York, 67 F. 896, 901, once said in reference to a similar situation, "The defendant's company was not entitled to warm itself into being in the sunlight of the complainant's reputation." The evidence shows that the marks of dissimilarity employed by the defendant in respect to the design, color and other characteristics of its labels and advertising matter, whereby it featured and emphasized the name "Taylor" as the principal part of its corporate name and brands, were insufficient to meet these essential requirements of fair competition.

■ The record discloses that the defendant abused its acquired right to use the personal name of Kenner Taylor, but the available and appropriate remedy is not to deny to the defendant all right to the use of the name but rather to prohibit its continued abuse of the right and to require of the wrongdoer adequate restitution to the party injured thereby. Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S. Ct. 288, 52 L.Ed. 481; Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., supra; L. E. Waterman Co. v. Modern Pen Co., supra.

A perpetual injunction will be granted restraining the defendant, its agents and servants, from using the name "Taylor" or any phrase of which the name "Taylor" forms a part, in its corporate name or in any of its whiskey labels or advertising matter, unless accompanied by a statement plainly and specifically showing that the defendant is "neither the successor to nor connected with the maker of 'Old Taylor' whiskey" and that its product is "not the product of E. H. Taylor, Jr. & Sons, or its successors". Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., supra; L. E. Waterman Co. v. Modern Pen Co., supra.

■ The defendant contends that plaintiff, in labeling its product as "Old Taylor" accompanied by the script signature "E. H. Taylor, Jr. & Sons", is guilty of deception and fraud upon the public and hence comes into Court with such unclean hands as to preclude its right to equitable relief. While it is true that the plaintiff does not manufacture its product at the same location, by the same methods and facilities or under the identical conditions which prevailed in the original manufacture of "Old Taylor" by E. H. Taylor, Jr. & Sons, the plaintiff's labels give adequate information as to the identity of the present producer and place of manufacture and there is no showing of any diminution in the quality of the "Old Taylor" whiskey manufactured and sold by the plaintiff as compared with the original. The defendant's contention in this respect is without merit. Layton Pure Food Co. v. Church & Dwight Co., 8 Cir., 182 F. 24; Metcalfe v. Brand, 86 Ky. 331, 5 S.W. 773, 9 Ky.Law Rep. 801, 9 Am.St.Rep. 282; Baglin v. Cusenier Co., 221 U.S. 580, 31 S. Ct. 669, 55 L.Ed. 863; Jacobs v. Beecham, 221 U.S. 263, 31 S.Ct. 555, 55 L.Ed. 729.

■ The defendant's invasion of the rights of the plaintiff by unfair competition, in the manner herein pointed out, entitles the plaintiff to the accounting prayed for, since, under the existing record, it does not clearly or certainly appear that the plaintiff would not be able to make out a case entitling it to substantial recovery. The case will be retained on the docket for

such proceedings as may be appropriate to that end. G. & C. Merriam Co. v. Saalfield, supra; Hamilton Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629; Anchor Stove & Range Co. v. Rymer, 6 Cir., 97 F.2d 689.

The parties may submit for entry formal findings of fact and conclusions of law, together with judgment in conformity herewith.