NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0229n.06

No. 16-5582

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| OAKLAWN JOCKEY CLUB, INC.; TAMPA BAY DOWNS, INC.; CHURCHILL DOWNS INC.; NEW YORK RACING ASSOC., INC.; NEW JERSEY THOROUGHBRED HORSEMEN'S ASSOC.; GULFSTREAM PARK RACING ASSOC., INC.; LOS ANGELES TURF CLUB, INC.; OREGON RACING, INC.; LAUREL RACING ASSOC., INC.; PACIFIC RACING ASSOC.; MARYLAND JOCKEY CLUB OF BALTIMORE CITY, INC., <br>    Plaintiffs-Appellants, <br> v. <br> KENTUCKY DOWNS, LLC and EXACTA SYSTEMS, LLC, <br>    Defendants-Appellees. | FILED <br> Apr 19, 2017 <br> DEBORAH S. HUNT, Clerk <br><br> ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |

**BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Plaintiffs, owners of horse-racing venues across the United States (the "Track Owners"), appeal the district court's dismissal of their action for trademark infringement.  Because Plaintiffs failed to adequately plead that Defendants' use of Plaintiffs' trademarks was likely to cause consumer confusion, we **AFFIRM**.

## I.  Background

In 2010, the Kentucky Horse Racing Commission amended its regulations to permit gambling on historical horse races.[1]  The regulations require that, after bets are placed, "the

---

[1]  Historical horse-race betting was developed to allow customers to gamble on horse racing even when no live races are being run.  Customers receive anonymized information about the historical horses, handicap the race, and place their bets.  At oral argument, it was also

terminal shall display a video replay of the race, or a portion thereof, and the official results of the race. The identity of the race shall be revealed to the patron after the patron has placed his or her wager." 810 KAR 1:011 § 3(7)(f). In 2013, Defendant Exacta Systems, then named Encore Gaming, developed an historical horse-race gambling platform (the "System"). On April 2, 2015, Defendant Kentucky Downs began using the System at its track.

The Track Owners have common-law and federally registered trademarks for the names of their racetracks. Many of the historical races utilized in the System were run at the Track Owners' venues. The System functions as follows. Customers are shown information about an historical race chosen randomly. The information is presented anonymously—horses, jockeys, the venue, and date are not identified and customers do not know which historical race they are betting on. After customers finalize their wagers, the System, as required by the Kentucky regulations, shows a "video replay" of the historic race. The replay is not an actual replay of the historical race. Rather, it is computer-generated, generic, and lasts for only a few seconds; it shows only the order of finish and does not attempt to visually recreate the racetrack that originally hosted the race. During the replay, the System displays the following identification information to substantiate the results of the race:

> Location: NAME OF TRACK
> Date:
> Race Number:
> ID:

The Track Owners contend that this brief display of their trademarks is likely to confuse consumers into believing that they are the source of the video recreation and endorse its accuracy.

---

represented that there is an "automatic" feature that skips the handicapping stage and operates similarly to a slot machine.

The only other challenged use of the trademarks arises from Exacta's advertising materials. The advertising brochure includes a screenshot of a video replay. The screenshot in the brochure includes the track names of Mountaineer Casino Racetrack & Resort, Rockingham Park, and Turf Paradise. However, the owners of these tracks are not parties to this suit. There is no mention of any of the trademarks in the actual text of the brochure. The brochure states that "[t]he Encore RBG System and its individual games have successfully undergone the rigorous testing of Gaming Laboratories International (GLI), the gold standard in technical review and authorization of wagering software and hardware." R. 20-7, PID 153. It also includes a large and colorful image of a checkmark next to the text "Gaming Labs Certified," and frequently references Encore trademarks and technology throughout the brochure.

On October 7, 2015, the Track Owners instituted this action against Kentucky Downs and Exacta seeking injunctive relief, damages, and disgorgement of profits. After the Track Owners moved for a preliminary injunction, Kentucky Downs and Exacta moved for dismissal of the case pursuant to Federal Rule of Civil Procedure 12(b)(6). Finding Defendants' use of the trademarks to be a non-trademark use, the district court granted the motion to dismiss. The district court alternatively found that even if there was a trademark use, dismissal was proper because Defendants were entitled to a fair-use defense as a matter of law.

The Track Owners appeal, arguing that: (1) Defendants' use of the trademarks is a trademark use that is likely to cause confusion, and, further, there are, at minimum, questions of fact in that regard that render dismissal on the pleadings inappropriate; (2) Defendants are not entitled to a fair-use defense; and (3) their amended complaint properly stated a claim for unfair competition.

## II. Analysis

### A. Standard of Review

Dismissals for failure to state a claim upon which relief can be granted are reviewed de novo. *Lambert v. Hartman,* 517 F.3d 433, 438-39 (6th Cir. 2008). "When deciding such a motion, we must construe the complaint in the light most favorable to the plaintiff and must accept all of the factual allegations contained in the complaint as true." *In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original). This standard does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B. Whether there was a trademark use

The Lanham Act defines "trademark" as "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. In order to state a claim of trademark infringement under the Lanham Act, a plaintiff must allege that (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion or mistake. 15 U.S.C. § 1114(1). There is no dispute the Track Owners own the trademarks and that Defendants used the trademarks in commerce; the sole issue is whether Defendants' use was likely to cause confusion.

The "touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the

goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). "To frame it another way, the ultimate question is whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1116 (6th Cir. 1996) (internal quotation marks omitted). "When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924). "Trademark law's likelihood-of-confusion requirement . . . is designed to promote informational integrity in the marketplace. By ensuring that consumers are not confused about what they are buying, trademark law allows them to allocate their capital efficiently to the brands that they find most deserving." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 512 (6th Cir. 2013).

Generally, we evaluate the likelihood of confusion through an eight-factor inquiry.[2] *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280. Before employing this test, however, we ask whether Defendants are using Plaintiffs' trademarks to identify the source of Defendants' product. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009). "If defendants are only using [the] trademark in a 'non-trademark' way—that is, in a way that does not identify the source of a product—then trademark infringement and false designation of origin laws do not apply," *Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003), and it is unnecessary to consider the eight-factor test. Here, we must determine whether

---

[2] The factors considered by the court include: (1) the strength of the senior mark; (2) the relatedness of the goods or services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the intent of the defendant in selecting the mark; and (8) the likelihood of expansion of the product lines. *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 280.

Defendants' use of Plaintiffs' trademarks in the video recreations of the historic horse races constitutes a "trademark use."

Our inquiry focuses on "whether a consumer is likely to notice [the plaintiff's trademark] . . . and then think that the [defendant's product] may be produced by the same company[.]" *Id.* at 696 (finding that the presence of the plaintiff's trademark in a URL path for the defendant's product would not create a likelihood of confusion and was not a trademark use). This court's decision in *Hensley Manufacturing* is particularly instructive. There, we acknowledged that the likelihood of confusion is generally a question of fact that is inappropriate to resolve at the motion-to-dismiss stage. *Hensley Mfg.*, 579 F.3d at 613. Nevertheless, we affirmed the dismissal of the suit because although the defendant's advertising materials used the plaintiff's trademark, the defendant did not use the trademark to identify the source of its products or to suggest an association between the defendant and the plaintiff. *Id.* at 611. Because there was no likelihood of consumer confusion regarding whether the plaintiff trademark owner was the source of the defendant's products, we held that the defendant's use of the trademark was a permissible non-trademark use. We concluded that "[the plaintiff] contends that 'facts *may exist* that establish a level of consumer confusion[.]' . . . But mere speculation is insufficient; it was [the plaintiff's] burden to allege those facts, if they indeed exist, in the first instance." *Id.* at 613 (emphasis in original).

The Track Owners argue that Defendants' display of their trademarks constitutes a trademark use because it confuses consumers into believing that the Track Owners provided or verified the video replays. We disagree. The System does not display live feeds of races being run at the Track Owners' venues, nor does it show actual video replays of previous races. The System merely shows brief, computer-generated generic recreations of the finish lines of

historical races and states the locations at which the races were run. These depictions are sufficiently different from the Track Owners' product—live horse racing at their venues—that the minimal use of the trademarks, preceded by the word "Location," would not confuse consumers into believing the videos were provided by Plaintiffs. The Track Owners attempt to analogize their trademarks to that of technology giant Apple Inc. They argue that "[j]ust as . . . a computer may be an Apple® computer, so too can a horse race be, for example, an Oaklawn® horse race or a Churchill Downs® horse race." Appellant Br. at 13. This analogy may be apt in certain circumstances; for instance, deciding where to watch a live horse race or which live-broadcast race to watch may be similar to deciding which brand of computer to purchase. Here, however, the fact that a race occurred at Oaklawn or Churchill Downs is relevant only as a factual matter—it is used so consumers can substantiate the race's result, not to promote the quality of Exacta's product.

The Track Owners' assertion that their trademarks are used "to substantiate or legitimize the video" has some merit. Appellant Br. at 5. However, they substantiate the video only in the sense that they provide consumers with the requisite details to verify the video game's accuracy. If the System displayed inaccurate results, it is unlikely that a wagerer would file a complaint with the relevant Track Owner under the belief that the Track Owner was the source of the videogaming product or the inaccurate information. Rather, a customer would likely contact one of the parties actively representing the accuracy of the results: Exacta, Kentucky Downs, or the Kentucky Horse Racing Commission. The term "Location" preceding the trademarks sufficiently explains to consumers that the trademarks are being used in a wholly descriptive manner and does not cause a likelihood of confusion as to the source of the video. The fact that

the replay is entirely generic and does not visually depict the Track Owners' facilities further supports this conclusion.

Additionally, Exacta's advertising materials do not mention the Track Owners at all; the only display of specific track names in the advertisement appears in a screenshot of a video replay, and the track names used are not owned by any Plaintiff. In fact, the brochure highlights that the System is certified by Gaming Laboratories International, and was "the result of decades of experience in developing legally compliant products for central determinant gaming markets." R. 20-7, PID 156–57. The advertising material thus promotes the System by trading on the goodwill of Gaming Laboratories International and Exacta itself, rather than that of the Track Owners.

The allegations in the amended complaint that Defendants' use of the trademarks is likely to cause confusion, and that such confusion has harmed the Track Owners' businesses and goodwill "in an amount that cannot be ascertained at this time" are conclusory. R. 20, PID 124. The amended complaint pleads no *facts* from which to infer that Defendants are engaging in a trademark use of Plaintiffs' trademarks. "[A] conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss," *Hensley Mfg.*, 579 F.3d at 611, and thus the claim was properly resolved on Defendants' motion to dismiss.

Because this was a non-trademark use of Plaintiffs' trademarks, we need not reach the question whether the fair-use defense applies. Additionally, since "likelihood of confusion is the essence of an unfair competition claim," *Champions Golf Club, Inc.*, 78 F.3d at 1123 (internal quotation marks omitted), and courts "apply the same analysis for Kentucky common law trademark infringement and unfair competition claims as they do for federal claims of trademark

infringement," *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 703 F. Supp. 2d 671, 688 n.17 (W.D. Ky. 2010), *aff'd*, 679 F.3d 410 (6th Cir. 2012), the preceding analysis also forecloses Plaintiffs' unfair competition claim.

### III. Conclusion

For these reasons, we **AFFIRM** the district court's grant of Defendants' motion to dismiss.