RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

SAZERAC BRANDS, LLC, a Delaware limited liability company; SAZERAC COMPANY, INC., a Louisiana corporation,

       *Plaintiffs-Appellants/Cross-Appellees*,

    *v.*

PERISTYLE, LLC, a Kentucky limited liability company; PERISTYLE HOLDINGS, LLC, a Kentucky limited liability company,

       *Defendants-Appellees/Cross-Appellants*.

Nos. 17-5933/5997

────────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:15-cv-00076—Gregory F. Van Tatenhove, District Judge.

Argued: June 7, 2018

Decided and Filed: June 14, 2018

Before: SUTTON, McKEAGUE, and DONALD, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:** Brendan J. Hughes, COOLEY LLP, Washington, D.C., for Appellants/Cross-Appellees. Brian F. Haara, TACHAU MEEK PLC, Louisville, Kentucky, for Appellees/Cross-Appellants. **ON BRIEF:** Brendan J. Hughes, Michael J. Klisch, COOLEY LLP, Washington, D.C., Scott P. Zoppoth, THE ZOPPOTH LAW FIRM, Louisville, Kentucky, for Appellants/Cross-Appellees. Brian F. Haara, Melissa Mahurin Whitehead, Kristin E. McCall, TACHAU MEEK PLC, Louisville, Kentucky, for Appellees/Cross-Appellants.

---

**OPINION**

---

SUTTON, Circuit Judge.   Colonel Edmund Haynes Taylor, Jr., "the most remarkable man to enter the whiskey industry during the post-Civil War years," built the Old Taylor Distillery in 1887.   Once the "most magnificent plant of its kind in Kentucky," the distillery fell into disrepair after the Colonel's death.   Will Arvin and Wesley Murry sought to turn things around.   In 2014, they formed Peristyle to purchase the property, renovate it, and eventually resume bourbon production there.   Peristyle regularly referred to its location at "the Former Old Taylor Distillery" or "Old Taylor" during the renovation period.

That generated heartburn for the next player in our case, Sazerac, a company that bought the trademark rights to "Old Taylor" and "Colonel E.H. Taylor" in 2009.   Sazerac objected to Peristyle's use of the Taylor name and sued Peristyle for infringement.   Because Peristyle used the Old Taylor name descriptively and in good faith, it finds shelter under the Lanham Act's fair use defense.   We affirm.

I.

In the inimitable words of our late colleague Boyce Martin:  "All bourbon is whiskey, but not all whiskey is bourbon."  *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 414 (6th Cir. 2012).   Bourbon must be made from a grain mixture that is at least 51% corn. 27 C.F.R. § 5.22(b)(1)(i).   It must be distilled to no more than 160 proof, barreled at no more than 125 proof, and bottled at no less than 80 proof.  *Id.*   It must be aged in charred new oak barrels.  *Id.*   And it is a drink of place:  It must come from Kentucky.

Generally speaking.   As busy bodies from other States like to point out, bourbon need not come from Kentucky, just the United States.  *Id.* § 5.22(l).   Hence its moniker:  America's native spirit.   But let Kentucky have its due.   Over 95% of the world's bourbon flows from an old Kentucky home.   *Bourbon Facts*, Kentucky Distillers' Association (2018), https://kybourbon.com/bourbon_culture-2/key_bourbon_facts/.   A constellation of circumstances gives the Bluegrass State unique advantages in making bourbon:  the local creative spirits, long

lost to history, who innovated the brew; the State's pure limestone waters, plentiful oak trees, and a grain-friendly climate, all needed to produce the drink; the too-many-to-count hollows in the eastern part of the State, all needed to sustain the continued production of the drink during Prohibition; and a rich and richly preserved history of bourbon making that stretches back to the late 18th century, all part of the experience of drinking bourbon today.

One part of that history involves the legacy of distiller Colonel Edmund Haynes Taylor, Jr. A jack of all trades, Colonel Taylor brought together marketing, finance, quality control, and lobbying capabilities under one roof, giving rise to the modern bourbon industry. *See* Reid Mitenbuler, Bourbon Empire: The Past and Future of America's Whiskey 152 (2015). One historian has called Colonel Taylor "the most remarkable man to enter the whiskey industry during the post-Civil War years" and "a bridge between the old ways and the new." Gerald Carson, The Social History of Bourbon: An Unhurried Account of Our Star-Spangled American Drink 87–88 (1963).

Taylor built the Old Taylor Distillery in 1887 in Woodford County, Kentucky. The distillery resembled a medieval limestone castle, surrounded by pergolas, pools, turrets, and gardens, earning distinction as the "most magnificent plant of its kind in Kentucky." Mitenbuler, *supra*, at 151. But beauty and success gave way to decay, and the distillery eventually fell into financial ruin. It exchanged hands several times in the decades after the Colonel's death and even served as a consolidation warehouse during Prohibition. Production ceased for good in 1972.

Bluegrass natives Will Arvin and Wesley Murry entered the picture in 2014. They formed Peristyle, LLC to purchase and renovate the Old Taylor distillery with an eye to resuming bourbon production there. Peristyle has since renamed the property "Castle & Key" and intends to do business under that name going forward, including when marketing its bourbons and whiskeys in the years ahead. But during the renovation period, the company regularly referred to its location at "the Former Old Taylor Distillery" or simply "Old Taylor." *E.g.*, R. 109-28 at 3; R. 109-18 at 2.

That did not sit well with Sazerac, which owns the trademark rights to "Old Taylor" and "Colonel E.H. Taylor" and produces bourbons under both names.  R. 1-2;  R. 1-3.  Sazerac sued Peristyle, alleging trademark infringement, unfair competition, and false advertising under the Lanham Act as well as common law trademark infringement, unfair competition, and passing-off violations.  Peristyle counterclaimed on several grounds:  trademark invalidity and cancellation, false designation of origin, false advertising, and unfair competition.

The district court granted summary judgment to Peristyle on all of Sazerac's claims against Peristyle.  But it did not rule on any of Peristyle's counterclaims.  Both parties now appeal.

## II.

*Jurisdiction*.  That last observation might suggest we lack jurisdiction over Sazerac's appeal.  Congress grants us appellate jurisdiction over final decisions of the district courts. 28 U.S.C. § 1291.  And a decision customarily becomes final only after the district court ends litigation on the merits, leaving nothing to do but execute the judgment.  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988).  That requirement at first glance seems to pose a barrier to this appeal because the district court has not yet resolved Peristyle's counterclaims against Sazerac.

But in the Rules Enabling Act, Congress granted authority to the rule makers to define when a district court ruling is "final" under § 1291.  28 U.S.C. § 2072(c).  To that end, Civil Rule 54(b) gives a district court judge this option:  "When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  The district court made that express determination here.  We thus have appellate jurisdiction over the district court's grant of summary judgment to Peristyle on all of Sazerac's claims against it.

*Trademark Infringement.*  Sazerac brings both Lanham Act and common law trademark infringement and unfair competition claims.  Because Kentucky common law tracks federal law

in this area, we apply a uniform framework. *See Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 687 F. App'x 429, 433–34 (6th Cir. 2017).

The Lanham Act makes any person who uses "any word, term, name, symbol, or device" in a way that is "likely to cause confusion, or to cause mistake, or to deceive as to . . . affiliation, connection, or association" liable to a senior trademark owner. 15 U.S.C. § 1125(a)(1)(A); *see id.* § 1114. The benchmark is whether the plaintiff has demonstrated a likelihood of consumer confusion, assessed via an eight-factor, nothing-is-off-the-table, totality-of-the-circumstances test. *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982); *see Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d. Cir. 1961) (Friendly, J.).

The Lanham Act also creates affirmative defenses. One of them is fair use. It applies when "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4).

As an affirmative defense, fair use applies even when the plaintiff has met his own burden and thus it "tolerate[s] some degree of confusion." *KP Permanent Make-Up*, *Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 119 (2004). That's because descriptive terms qualify as trademarks only after they take on a secondary meaning "distinctive of the applicant's goods." 15 U.S.C. § 1052(f). At that point, the registrant gets an exclusive right to use the mark in the way associated with his goods, but ownership of the original, descriptive sense of the word remains public. "When the mark is used in a way that does not deceive the public," as Justice Holmes put it, "we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924).

So distilled, the fair use defense has two elements. The defendant must (i) use the label in a descriptive or geographic sense and (ii) do so fairly and in good faith. *See ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920 (6th Cir. 2003).

Peristyle used the Old Taylor name in a descriptive and geographic manner. It referred to Old Taylor to pinpoint the historic location where Peristyle planned to make a new bourbon, not

to brand that bourbon. Keep in mind that Peristyle has not begun selling its bourbon. It won't hit the shelves for four years. When it does hit the shelves, the bourbon will be called Castle & Key and Peristyle does not plan to put "Old Taylor" on the bottle.

A few examples of the company's use of the description confirm the salience of this distinction. One flyer is titled "The Historic Site of The Old Taylor Distillery" and notes that "We are busy making history and restoring this bourbon ICON, the Historic Site of The Old Taylor Distillery." R. 105-10 at 2. A social media post invited followers to the "VIP Mailing List for the Former Old Taylor Distillery." R. 109-21 at 3; 109-18 at 2. Another poster promotes barrel storage services at "the distillery formerly known as: Old Taylor." R. 105-19 at 2. These examples (and others of the same ilk) confirm that Peristyle used Old Taylor descriptively to identify a geographic location, the Old Taylor Distillery in Woodford County, Kentucky.

Compare this situation to *National Distillers Products Corp. v. K. Taylor Distilling Co.*, 31 F. Supp. 611 (E.D. Ky. 1940). A distillery that marketed its bourbon under the brands "Kenner Taylor" and "K. Taylor," the court ruled, infringed the Old Taylor trademark. *Id.* at 615. That makes sense. What descriptive value did adding "Kenner Taylor" to a bottle of bourbon provide to the consumer? None. It served only to dupe the public into thinking that Kenner Taylor bourbon was a successor to Old Taylor bourbon. *See id.* That's quintessential use as a trademark and quintessential exploitation of the Taylor brand's goodwill. Peristyle did no such thing. As Judge Van Tatenhove correctly recognized below, "Peristyle is not attempting to trade off the goodwill of Sazerac. Instead, Peristyle is enjoying the goodwill already ingrained in the property it purchased and is advertising itself for what it is: a distillery first built by Colonel Taylor, subsequently abandoned, but once again purchased, renovated, and restored to life as Castle & Key." *Sazerac Brands, LLC v. Peristyle, LLC*, No. 3:15–cv–00076, 2017 WL 4558022 at *5 (E.D. Ky. July 14, 2017). The contrast is as stark as comparing a bourbon to a scotch.

Peristyle acted in good faith too. One reason why Peristyle referred to the distillery by name so often was that it had yet to settle on a brand name for itself. That process was extensive, lasting over a year, in part because "the reverence for [Old Taylor] is tremendous . . . and to find

a name that would justify the spirit and architecture and history of this place was a really tall order." R. 107-14 at 8–9. All along, the company recognized that the Old Taylor trademark belonged to Sazerac and that Peristyle would have to develop its own name to brand its products. Once it decided on a name, Peristyle's fliers featured that name: Castle & Key.

True, Peristyle did not always preface Old Taylor with "former" or "historic." But when they used Old Taylor alone, context showed that they referred to the physical distillery in a descriptive manner. One newsletter, for example, noted "We're saving a seat for you at . . . Old Taylor Distillery." R. 109-13 at 2. And in a social media post, master distiller Marianna Barnes urged her followers to spread the word to those who "will be interested in what I'm doing at Old Taylor." R. 109-28 at 3. The record confirms that Peristyle never used Old Taylor in a non-descriptive fashion.

Sazerac points out that there is a four-hundred foot "Old Taylor Distillery" sign on the distillery's barrel storage warehouse and a twenty-foot "The Old Taylor Distillery Company" sign above the entrance to its main building. But both signs adorned the building before Peristyle purchased it confirming that the company did not put them there or otherwise use them in bad faith.

Sazerac persists that Peristyle's purchase conveyed an interest only in real property, not intellectual property. True. But that is neither here nor there. What matters is that Peristyle has used the signs only to identify the location of a historic site, one sufficiently historic that the National Register of Historic Places lists it, accurately and descriptively, under the name "Old Taylor Distillery." National Register of Historic Places Program, National Park Service (Mar. 24, 2017), https://www.nps.gov/nr/listings/20170324.htm.

Past is prelude when it comes to Peristyle's future. It plans to put up a Castle & Key sign next to the historic signs before the company opens the yet-to-be-finished distillery to the public. Once they do, visitors will know they are at the historic Old Taylor distiller, where Castle & Key distills its own bourbon. Trademark law demands no more.

Sazerac points out that Peristyle has already begun commercial activities at the distillery—by hosting events there (including a wedding) and renting barrel-aging warehouse

space to third parties. These commercial activities, Sazerac maintains, show that Peristyle has used Old Taylor as a trademark. But the argument walks up the wrong aisle. What matters is not whether the competitor engaged in commercial or non-commercial activity; it is whether the competitor used the mark descriptively or non-descriptively. Granted, Peristyle often referred to the Old Taylor Distillery when marketing these events. But that was quite natural in view of the reality that every event occurred on the site: the Old Taylor Distillery. One way to make sure that people get to an event is to describe the location accurately. Fair use at each turn.

One last thing. Sazerac devotes considerable energy to challenging our circuit's threshold "trademark use" test. In our circuit, plaintiffs carry a threshold burden to show that the defendant is using a mark "in a '[]trademark' way" that "identifies the source of their goods." *Interactive Prods. Corp. v. a2z Mobile Office Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003); *see Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 793–94 (6th Cir. 2015); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610–12 (6th Cir. 2009). Otherwise the "trademark infringement and false designation of origin laws do not apply." *Interactive Prods*. *Corp.*, 326 F.3d at 695. Only if the plaintiff clears this threshold test do we proceed to the conventional likelihood-of-confusion analysis and fair use defense, among other defenses.

As Sazerac points out, our threshold test has drawn criticism. *Kelly-Brown v. Winfrey*, 717 F.3d 295, 305–08 (2d Cir. 2013); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 168–70 (4th Cir. 2012). "The Sixth Circuit's test," in the words of the Second Circuit, "would lead to the dismissal of [] claims without addressing what is beyond doubt the central question in considering consumer confusion: whether consumers were actually confused by the allegedly infringing product." *Kelly-Brown*, 717 F.3d at 307. And the leading trademark treatise notes the Sixth Circuit's "eccentric and peculiar view is erroneous because it finds no support either in the Lanham Act or in precedent." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed. 2018).

The critics may have a point, but they exaggerate the consequences of our approach. The trademark use test resembles in nearly every particular the fair use defense that we just applied. There is little daylight between the "non-trademark use" the Circuit test requires and the "descriptive use" that the statute requires. So it will often be the case that a claim that fails our

threshold trademark use test will also be vulnerable to a fair use defense.  Exhibit A:  Peristyle used the Old Taylor name in a "non-trademark way" under our circuit's test and "fairly and in good faith only to describe goods or services" under the Act.

Even so, we must acknowledge that fact patterns might arise where our test might make a difference and where we might wish to reconsider whether our test respects the language of the statute.  Recall that our test creates a threshold burden on the *plaintiff*, all before it must show consumer confusion.  Under the Lanham Act, the plaintiff need only demonstrate confusion to make a presumptive case of infringement.  The *defendant* meanwhile can always prove fair use as an affirmative defense.  One concern, then, is that our test effectively shifts the burden of statutory fair use from the defendant to the plaintiff.  The other concern is that the fair use test under the Lanham Act not only asks how the defendant used the mark; it also asks whether the defendant used the mark "fairly and in good faith."  15 U.S.C. § 1115(b)(4).  Our test thus not only shifts the burden on the fair use defense; it also truncates it.

Faithfully applying circuit precedent, the district court decided that Sazerac failed to clear this threshold test.  We may affirm on any ground supported by the law and the record that will not expand the relief granted below.  *Thigpen v. Roberts*, 468 U.S. 27, 30 (1984).  We hold that Peristyle's use of the Old Taylor name constituted fair use—a defense that overlaps with many of the concerns identified in our threshold trademark use inquiry.

*False Advertising*.  That leaves Sazerac's Lanham Act false advertising allegation.  We can make quick work of that claim.  It requires, among many other things, a "false or misleading description of fact" or a "false or misleading representation of fact." 15 U.S.C. § 1125(a)(1).  On this record and for the reasons just given, Peristyle made no such statement and thus Sazerac's false advertising claim fails as well.

We affirm the district court's judgment.