**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0019n.06

Case No. 20-5409

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 11, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALAN RUPP, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| THE COURIER-JOURNAL, INC., | ) | KENTUCKY |
| | ) | |
|     Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SILER, CLAY, and GRIFFIN, Circuit Judges.

SILER, Circuit Judge. Alan Rupp believes The Courier-Journal, Inc. infringed on his DERBY-PIE® trademark. Because the Courier-Journal newspaper did not use "Derby Pie" in a trademark infringing way, we **AFFIRM** the district court's dismissal of Rupp's claims.

**FACTUAL AND PROCEDURAL HISTORY**

Rupp owns DERBY-PIE®, a federal trademark for a "well-known chocolate nut pie" sold nationwide. On May 6, 2017, the Courier-Journal published the following article in its daily newspaper:



THE COURIER-JOURNAL

Chocolate-walnut bourbon pie from Captain's Quarters.

# Bourbon makes this Derby pie a state original

THE COURIER-JOURNAL

When you're headed on a vacation, the destination is what it's all about. The destination, in this case, is dessert.

This recipe from the The Courier-Journal archive — provided years ago by the fine folks up river at Captain's Quarters — it is a simple — piece of, um, pie.

It doesn't even require that you make your own pie crust.

But don't even think about using Scotch, Tennessee whiskey or that stuff from north of the border in this dessert.

### Derby chocolate-walnut pie

1½ cups sugar
6 tablespoons flour
3 eggs, beaten
¼ cup (1½ sticks) butter, melted
1½ cups chopped walnut pieces
1½ cups chocolate chips
1½ ounces bourbon
10-inch pastry shell
Heat oven to 350 degrees
Combine sugar with flour. Beat eggs. Add to sugar mixture.
Melt butter. Slowly add to sugar mixture so as not to cook eggs. Add walnut pieces, chocolate chips and bourbon. Stir to combine.
Pour into unbaked pastry shell. Bake for about 50 minutes. Pie crust will be golden brown.

*Makes 1 10-inch pie*

Days later, Rupp sent a letter to the Courier-Journal contending that the article constituted a knowing infringement on its trademark. A little over a month later, the Courier-Journal published the following article:



Rupp brought suit, asserting "statutory and common law trademark infringement, inducement of infringement, contributory infringement and false designation of the origin." The district court dismissed all claims with prejudice.[1] It found that "the Complaint fail[ed] to plausibly establish that Defendant used Plaintiff's Mark in any other way than a non-trademark one[,]" and, as such,

---

[1] Rupp withdrew Count II of his Complaint, a claim for trademark dilution. The district court dismissed that claim with prejudice, which Rupp has not appealed. Nor has Rupp appealed the district court's dismissal with prejudice of Count III of his Complaint, a claim for fraud, or the fact that his claims were dismissed with, not without, prejudice.

did "not plausibly establish that there is a risk of consumer confusion . . . ." Rupp challenges this finding.

## DISCUSSION

"The Lanham Act defines 'trademark' as 'any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Oaklawn Jockey Club, Inc. v. Ky. Downs, LLC*, 687 F. App'x 429, 431 (6th Cir. 2017) (alteration in original) (quoting 15 U.S.C. § 1127). "The touchstone of [trademark infringement] liability . . . is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) (citations omitted). "[T]he likelihood of confusion analysis . . . involves a preliminary question: whether the defendants 'are using the challenged mark in a way that identifies the source of their goods.' If they are not, then the mark is being used in a '"non-trademark" way' and trademark infringement laws . . . do not even apply." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609–11 (6th Cir. 2009) (affirming Rule 12(b)(6) dismissal of trademark infringement claims pursuant to the non-trademark use rule) (quoting *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 695 (6th Cir. 2003)). The district court dismissed Rupp's trademark action according to this rule.[2]

In evaluating whether the Courier-Journal is liable for trademark infringement for using "Derby pie" in its two articles, the question is whether the Courier-Journal used "Derby pie" in a

---

[2] It appears that this court has only applied the non-trademark use rule to direct trademark infringement and false designation of origin claims. *See, e.g., Interactive Prods.*, 326 F.3d at 693–98; *Hensley*, 579 F.3d at 609–11; *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 791–94 (6th Cir. 2015); *Oaklawn*, 687 F. App'x at 430–33; *Kassa v. Det. Metro Convention & Visitors Bureau*, 672 F. App'x 575, 575–76 (6th Cir. 2017). Although Count I of Rupp's Complaint articulates both direct and indirect trademark infringement claims (i.e., inducement of and contributory infringement), there is no indication that Rupp is appealing anything

trademark way, i.e., in a way to identify the sources of the pie recipe advertised in the first article and the macarons in the second article. *See Oaklawn*, 687 F. App'x at 430–33 (affirming Rule 12(b)(6) dismissal of trademark infringement claims pursuant to the non-trademark use rule). In short, "[i]f [the Courier-Journal is] only using [Rupp's] trademark in a 'non-trademark' way—that is, in a way that does not identify the source of [the pie recipe and macarons]—then trademark infringement and false designation of origin laws do not apply." *Interactive Prods.*, 326 F.3d at 695 (citation omitted).

The second article at issue here is a biographical piece about a Louisville baker who makes various flavors of macarons, one of which is "Derby Pie[.]" Since the article is an in-depth look at the story of an independent, small business owner, i.e., a baker, who makes "Derby Pie" flavored macarons, not pies, a reader could not possibly "notice [Rupp's trademark] . . . and then think that the ['Derby Pie' macaron] may be produced by the same company (or a company affiliated with the company) that makes [DERBY-PIE®]." *Id.* at 696. "Derby Pie[,]" like "Mint Julep" and "Peach Tea" as used in the article, informs the reader of the general flavor, not the origin, of the macaron.[3] Importantly, the origin of the "Derby Pie" macaron is explicitly identified as the independent baker discussed in the article, not Rupp (or Kern's Kitchen, which appears to be the

---

more than the dismissal of his direct trademark infringement claims pursuant to the non-trademark use rule. In any event, "for there to be liability for [indirect] trademark infringement, the plaintiff must establish underlying direct infringement." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 163 (4th Cir. 2012) ("In other words, there must necessarily have been an infringing use of [Rupp]'s mark that was encouraged or facilitated by the [Courier-Journal]."). Rupp does not expound on his conclusory assertion that the sources of the products discussed in the articles acted nefariously here. Additionally, since "there is no federal common law" governing trademark infringement actions, *see Int'l Ord. Joe's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 915 (9th Cir. 1980), Rupp's "common law" claims stem from state law. Because the events giving rise to this action arose in Kentucky, Kentucky state substantive law applies to those claims. *See Menuskin v. Williams*, 145 F.3d 755, 761 (6th Cir. 1998). That being said, this court has affirmed the dismissal of Kentucky state law trademark infringement claims based on application of the non-trademark use rule, *Oaklawn*, 687 F. App'x at 433–34, and no challenge has been made to that application here.

[3] Indeed, Rupp offers no reason to believe that the independent baker uses "Derby pie" in a way other than to simply designate the flavor of a macaron. Rupp identifies no nefarious acts on the part of the baker so as to afford indirect trademark liability on the Courier-Journal's part.

company that actually makes the DERBY-PIE®)—"Derby Pie" cannot be said to identify the source of the macaron when the actual source of the macaron is explicitly identified in that article. Nor can it be said that an association between Rupp and the "Derby Pie" macaron was suggested. Although Rupp's complaint states he "ha[s] applied . . . DERBY-PIE® to various products sold on a nationwide basis[,]" he has never specifically asserted that he (or Kern's Kitchen) produces macarons, nor has he alleged error in the district court's finding that "[a] DERBY-PIE® is a pie[,]" not a macaron. *See Oaklawn*, 687 F. App'x at 432 ("[Defendants' product is] sufficiently different from [Plaintiffs'] product . . . .").

Similarly, "Derby pie" as used in the first article does not denote *the* recipe for *the* DERBY-PIE® but *a* recipe for *a* "Derby pie": "'It happens all the time,' says [counsel for Rupp]. People say Derby-Pie® as shorthand for chocolate nut pie the way they say Xerox when what they mean is copy or copier." As used in the article, "Derby pie" simply informs the reader of the type of pie—a chocolate-walnut pie—that the reader can make from the recipe provided. *See id*. at 433 (finding that the context surrounding the use of the trademarked phrase "sufficiently explain[ed] to consumers that the trademarks [we]re being used in a wholly descriptive manner"). Rupp's own evidence indicates that "Derby pie" can be used in this way, similar to the way that "Chess pie" would be used were that phrase trademarked. Such a non-trademark use of "Derby pie" is also supported by the fact that the Courier-Journal, like it did in the second article, twice identified the source of the recipe as Captain's Quarters (restaurant), not Rupp (or Kern's Kitchen).

Nor can it be said that an association between Rupp and the "Derby pie" recipe was suggested.[4] The "Derby pie" described in the first article is "sufficiently different" from DERBY-

---

[4] The first article reveals that the Courier-Journal, not Captain's Quarters, referred to the pie recipe as one for "Derby pie[,]" as Captain's Quarters appears to refer to its recipe as one for "Chocolate-walnut bourbon pie" or "Derby chocolate-walnut pie[.]" Rupp offers no reason to believe that Captain's Quarters has acted nefariously, so the Courier-Journal has not indirectly infringed here either.

PIE®.  *See id*.  An exhibit submitted by Rupp himself in support of his response to the Courier-Journal's motion to dismiss notes that "Derby-Pie contains no bourbon . . . ."  Although just a difference of one ingredient, Rupp's own evidence reveals that no reader of an article describing a "Derby pie" with bourbon, especially one called a "state original[,]" would associate such a pie with DERBY-PIE®.  And, the recipe does not simply differ from DERBY-PIE® in the addition of one ingredient, but it is also missing a key ingredient present in DERBY-PIE®—vanilla.  As another of Rupp's exhibits reveals:  "If you buy something called Derby-Pie®, you know it's made by Kern's Kitchen and will have walnuts and vanilla.  Chocolate nut pie, on the other hand, is a generic term for a pie that might have walnuts and vanilla, or it might have pecans and vanilla, or pecans and bourbon, or almonds and amaretto."  In other words, Rupp's own evidence reveals that no reader could possibly think that a so-called "Derby pie" containing bourbon and no vanilla came from the company or companies associated with DERBY-PIE®.

In sum, because (1) the Courier-Journal identified the specific sources of the pie recipe and macaron in its articles; (2) these products are "sufficiently different" from products designated by DERBY-PIE®, meaning there could be no risk of misassociation between the independent baker/Captain's Quarters and Rupp/Kern's Kitchen; and (3) the Courier-Journal has used the phrase "Derby pie" in a "wholly descriptive manner[,]" we can assuredly say that the Courier-Journal did not use "Derby pie" in a trademark way.

The district court further justified such a conclusion by pointing to the structure of the phrase "Derby pie" as used in the first article.  Because the first article was published "[o]n the same day as the 2017 Kentucky Derby," the district court found that "the headline . . . uses 'Derby' to modify 'pie,' not to identify the source of the product as DERBY-PIE®.  This is analogous to using 'Derby' to modify 'horse,' 'hat,' or 'party' and does not constitute an impermissible use of

the Mark." In other words, the district court recognized that the Courier-Journal's use of "Derby pie" in its first article is a typical play on words seen in newspapers that, here, both tips off the reader to the generic flavor of pie discussed and the event celebrated by the making of that pie. In neither of these ways, however, is the phrase used to designate the product as DERBY-PIE®.

In his briefs, Rupp essentially just points to the strength of the DERBY-PIE® mark and perfunctorily attempts to apply the eight-factor likelihood of confusion test. Rupp does not grapple with the necessary preliminary question of the non-trademark use rule, however. *See Hensley*, 579 F.3d at 610. His only response to that rule is a criticism of it, pointing to this court's acknowledgment of such criticism in *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 859 (6th Cir. 2018). Regardless of this criticism, however, "[a] panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision." *Salmi v. Sec'y Health & Hum. Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) (citations omitted). Moreover, the criticisms of the test, termed "exaggerate[d]" by this court in *Sazerac*, were essentially rejected in that case. 892 F.3d at 859. Indeed, as the court suggested, there is little substantive difference between the non-trademark use rule and the fair use defense. *Id*. at 857, 859 ("[F]air use . . . applies when 'the use of the name [or] term . . . charged to be an infringement is a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party . . . .'" (quoting 15 U.S.C. § 1115(b)(4)). Although the court "acknowledge[d] that fact patterns might arise where our test might make a difference and where we might wish to reconsider whether our test respects the language of the statute[,]" *id*. at 859, Rupp does not articulate how the facts of the case *sub judice* constitute such a fact pattern.

In sum, application of the non-trademark use rule here bars Rupp's trademark infringement claims, as the Courier-Journal did not use "Derby-Pie" in a trademark-infringing way.  We decline to deal with the First Amendment issue raised by the Courier-Journal, as it is unnecessary to the resolution of this case.

**AFFIRMED**.