NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0355n.06

No. 22-3974

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 03, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| ANDREW L. RICE, et. al., | ) | |
| Plaintiffs-Appellants, | ) | |
|  | ) | |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE SOUTHERN |
| VILLAGE OF JOHNSTOWN, OHIO, | ) | DISTRICT OF OHIO |
| Defendant-Appellee. | ) | |
|  | ) | OPINION |
|  | ) | |

Before: SUTTON, Chief Judge; BATCHELDER and LARSEN, Circuit Judges.

LARSEN, J., delivered the opinion of the court in which SUTTON, C.J. and BATCHELDER, J., joined. BATCHELDER, J. (pg. 8), delivered a separate concurring opinion.

LARSEN, Circuit Judge. The Rice family[1] sought to have their eighty-acre property annexed into the Village of Johnstown and rezoned for a residential development. After their plan failed, the Rice family sued the Village of Johnstown, alleging that the Village violated its due process rights by unlawfully delegating legislative authority to the Johnstown Planning and Zoning (P&Z) Commission, the authority that rejected the family's rezoning application. The district court granted summary judgment to the Village. We AFFIRM.

---

[1] Appellants are individual members of the Rice family, the Parker family trust, and Wilcox Investment Group, LLC and Wilcox Communities, LLC. We will refer to appellants collectively as "the Rice family" unless otherwise specified.

I.

We explained the facts and procedural history in our prior opinion as follows:

> The Rice family owns eighty-plus acres of vacant land in Monroe Township, Ohio. It proposed to transform the property into a housing development called "Concord Trails" through a purchase agreement with Wilcox Communities, a local development and construction business. But the arrangement faced two obstacles. First, Monroe Township had zoned the property as Agricultural and R-1, and the proposed development was too dense for that zoning. Second, the development needed access to municipal services, which only the neighboring Village of Johnstown could provide.

> To overcome these hurdles, the Rice family set out to have the farm annexed into Johnstown and zoned as a "planned unit development (PUD)." Instead of proceeding one step at a time, the Rice family began both processes simultaneously. "[D]iscussions with Village personnel" led the family to believe that annexation would be a simple "formality" that would occur "along with" zoning. And, in fact, it is undisputed that annexation can be pursued "concurrently" with the request for PUD zoning and "need not be completed" for zoning to be approved. In Wilcox's experience, this was "typical practice in Ohio." So, the Rice family began both processes at once. It spent the next eighteen months, and hundreds of thousands of dollars, pursuing the redevelopment plan with Johnstown. Nonetheless, both the zoning and the annexation were eventually rejected, dooming the Concord Trails project.

> Johnstown's Planning and Zoning Code has a two-part process for zoning as a PUD. *See* JOHNSTOWN, OHIO, PLANNING AND ZONING CODE §§ 1179.01–1179.04 (1985). At the time the Rice family applied, the applicant first had to secure preliminary approval from the P&Z Commission, composed of five individuals appointed by the Village Council for four-year terms. *Id.* Only with that approval in hand could the applicant apply for final development plan approval from the Village Council. *Id.* Section 1170.02 of the Planning and Zoning Code stated that the P&Z Commission's preliminary approval was "necessary before an applicant may submit a final development plan." The Village Council had never denied a final plan once the preliminary plan had been approved. And the P&Z Commission's preliminary decision was not appealable or reviewable. So, the Rice family contends, this first step was necessary, sufficient, and final for zoning as a PUD. The ordinance at the time contained the following instruction to the Commission:

> > [The] Commission shall review the preliminary development plan and application to determine if it is consistent with the intent and purpose of this Zoning Ordinance; whether the proposed development advances the general welfare of the community and neighborhood; and whether the benefits, combination of various land uses, and the surrounding area justify the deviation from [a] standard district.

In June 2017, the Rice family submitted an initial concept plan to the P&Z Commission and received positive feedback. Over the next year, the family went back and forth with the P&Z Commission, receiving more positive feedback; and it held a town hall that was open to the community. Feeling optimistic, the family submitted a preliminary PUD application and paid an application fee of $26,450. Then, following a Commission meeting on July 31, 2018, the Rice family submitted a revised application, incorporating feedback on decreased density, pedestrian connectivity, and "buffer areas." The P&Z Commission met again on August 28 to review the updated application but tabled the matter. But on September 19, the Commission convened a special meeting for final consideration and voted to reject the development plan, finding that it did not "advance the general welfare" of Johnstown. Because Commission approval was required to proceed to the next stage, the denial ended the Rice family's application for zoning and the Concord Trails project.

Meanwhile, the annexation process continued. Annexation, like zoning, involved a multi-step process. First, Johnstown approved a "services resolution" stating that the Village would provide all necessary municipal services. Next, the Licking County Commissioners approved the annexation. Finally, the petition went to the Village Council for a vote. But once the Commission rejected the Rice Family's zoning application on September 19, 2018, the Village Council declined to vote. The 120-day statutory window expired in January 2019, denying the annexation petition by "pocket veto."

Still hoping for annexation, the Rice family initiated a second annexation petition in November 2019. Again, the family cleared the first two steps, but the Village Council denied the petition, this time by a 7-0 vote. As of this appeal, the Rice family has not applied again, though they are not precluded from doing so.

The Rice family sued the Village of Johnstown in the Southern District of Ohio. The family made two claims for relief, based solely on the denial of the zoning application. First, it alleged that Ordinance 1179.02 unlawfully delegated standardless and final legislative authority to the P&Z Commission, resulting in a denial of its Fourteenth Amendment right to due process. Second, it alleged that the same unlawful delegation of legislative authority violated its due process rights under the Ohio Constitution. The Rice family sought (1) a declaration that the ordinance unlawfully delegated authority to the P&Z Commission in violation of the Ohio and U.S. Constitutions, (2) an injunction against enforcement of the ordinance, and (3) compensatory damages for the fees and expenses associated with their rejected preliminary application.

*Rice v. Village of Johnstown* (*Rice I*), 30 F.4th 584, 586–88 (6th Cir. 2022) (footnotes omitted).

Both parties moved for summary judgment. The district court granted summary judgment

for the Village, concluding that the Rice family lacked standing to pursue its due process claim.

*Id.* The Rice family appealed. We reversed, concluding that the Rice family had standing to pursue a unique kind of nondelegation claim, grounded in the Due Process Clause, under the Supreme Court's decisions in *Eubank v. Richmond*, 226 U.S. 137 (1912), and *Washington ex rel. Seattle Tile Trust Co. v. Roberge*, 278 U.S. 116 (1928). *Id.* at 591–94. But we held that the family's claims for declaratory and injunctive relief were moot. *Id.* at 594. On remand, the district court again granted summary judgment in Johnstown's favor, dismissing the Rice family's due process claims under the United States and Ohio Constitutions.[2] It determined that the Rice family did not have a property or liberty interest protected by the Due Process Clause because it lacked a legitimate claim to entitlement in the rezoning. The Rice family once again appeals.

II.

Summary judgment is appropriate when, drawing all inferences in favor of the nonmovant, there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018) (citations omitted). Our review is de novo. *Id.*

The Rice family challenges the dismissal of its nondelegation claim under the Due Process Clause. In *Rice I*, we explained the hallmarks of a nondelegation claim under *Eubank* and *Roberge*. "First, as a due process doctrine, its protection extends only to alleged deprivations of 'life, liberty,

---

[2] In *Rice I*, we explained that a state constitution may contain "its own nondelegation doctrine restricting the delegation of state, or even municipal, legislative authority on separation of powers grounds." 30 F.4th at 589. We read the Rice family's complaint as "purport[ing] to invoke such a doctrine, arising under the Ohio Constitution." *Id.* But to the extent the Rice family invoked such a doctrine in the complaint, it has abandoned any such claim on appeal, instead making clear that its state nondelegation claim arises under the Due Process Clause of the Ohio Constitution and that "[t]he parameters of Federal and State due process are identical." Appellants Br. at 27. The Rice family expressly agrees with the district court's decision to "treat[] the federal and state constitutional claims as one." *Id.* at 28 n.8. Given that concession, we do the same.

or property.'" *Rice I*, 30 F.4th at 590 (quoting U.S. Const. amend XIV, § 1). "Second, nearly all cases invoking this doctrine have involved a delegation of legislative authority to a private party." *Id.* "Third, the cases have often emphasized that the delegee acted with little or no guidance." *Id.* And fourth, "the cases have shown particular concern about the delegee's self-interest. A delegee whose own interests may be affected by the proceedings might act for selfish or arbitrary reasons." *Id.* (citations omitted).

The district court determined that the Rice family's claim failed because it did not have a property or liberty interest in the rezoning. We need not decide that question because the Rice family's claim fails for a different reason—it has not made the necessary showing that the legislature delegated its authority to a self-interested private party. *See Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 859 (6th Cir. 2019) ("We may affirm on any ground supported by the law and the record that will not expand the relief granted below.").

As we explained in the Rice family's first appeal, "nearly all cases invoking this doctrine have involved a delegation of legislative authority to a private party." *Rice I*, 30 F.4th at 590. For example, *Eubank* and *Roberge* involved "local governments delegat[ing] zoning authority to private property owners." *Id.* Others involved delegation of legislative authority to the American Dental Association, labor organizations and employers, local residents, a natural gas utility, and website owners. *Id.* "Only the D.C. Circuit has applied the doctrine (or its close cousin) to a 'government entity' (Amtrak), and, even then, the court emphasized Amtrak's 'unique' status 'as a for-profit corporation.'" *Id.* (quoting *Ass'n of Am. R.R. v. U.S. Dep't of Transp.*, 821 F.3d 19, 23, 31 (D.C. Cir. 2016)). And the Rice family has not even attempted to show that the P&Z Commission shares any of Amtrak's "unique" characteristics.

As Judge Batchelder explained in her partial dissent in *Rice I*, the P&Z Commission bears no resemblance to these private individuals or entities:

> [T]he Johnstown Planning and Zoning Code did not delegate legislative authority to a private party. Rather, the Village Council appoints members to the P&Z Commission, a regulatory body that is "presumptively disinterested," *Carter* [*v. Carter Coal Co.*, 298 U.S. 238, 311 (1936)]. *See* Johnstown Charter, §§ 7.02(b), 7.03(a). Without evidence that self-interest compromised the P&Z Commission's presumptive neutrality, Plaintiffs face an uphill battle in establishing their *Eubank* claim against a regulatory body.

*Id.* at 597 (Batchelder J., concurring in part and dissenting in part).

To expand on this point, the P&Z Commission is composed of public officials, not private parties. *See* Johnstown Charter, § 7.03(a) ("The Planning and Zoning Commission shall consist of five electors of the Municipality who shall serve overlapping four-year terms; one of which may be a Council member who shall serve at the pleasure of Council; and one of which may be a representative of Johnstown-Monroe Board of Education."); *see also* Ohio Rev. Code § 102.01(B) ("'Public official or employee' means any person who is elected or appointed to an office or is an employee of any public agency."). The Commission is a public body; it holds its meetings in public and is subject to the Open Meetings Act. *See* JOHNSTOWN, OHIO, PLANNING AND ZONING CODE (1985) § 1129.02; R. 29-1, PageID 770. All actions taken by the Commission "shall be by resolution and recorded in the minutes." *Id.* The Commission is subject to the constraints of the duly elected Village Council, which provides the Commission with authority to act. *See* Johnstown Charter, § 7.03(b). And finally, the Rice family has offered no evidence of self-interest by members of the P&Z Commission.

In sum, this is not a situation in which "self-interested private parties . . . use state power to deprive owners of property interests for selfish or arbitrary reasons." *Rice I*, 30 F.4th at 596 (Batchelder J, concurring in part and dissenting part). So the Rice family's claim under this unique nondelegation doctrine fails.

The Rice family responds only by saying that the P&Z Commission is still not a *legislative* body; instead, its members "act solely in an administrative capacity." Reply Br. at 19–20. But that misses the point. In the limited circumstances in which it operates, the federal Constitution's *Eubank* doctrine forbids the standardless delegation of legislative authority to a private, self-interested actor. *Rice I*, 30 F.4th at 590–91. Beyond that, the federal Constitution has little to say about whether state legislative bodies ought to more jealously guard their own power. *See id.* at 589. As the Seventh Circuit has explained, there is no "general federal constitutional doctrine limiting a *state* legislature's delegation of legislative authority to an administrative agency." *United Beverage Co. of South Bend, Inc. v. Ind. Alcoholic Beverage Comm'n*, 760 F.2d 155, 157 (7th Cir. 1985). Because the Rice family can't show that the Village Council delegated legislative authority to a self-interested private party, its claim fails.

\* \* \*

We AFFIRM.

ALICE M. BATCHELDER, Circuit Judge, concurring. A party's standing is a jurisdictional requirement, *see United States v. Texas*, 143 S. Ct. 1964, 1976 (2023), and therefore I am obligated to address the Rice Family's standing before examining the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). In *Rice I*, I argued that the plaintiffs lacked standing because they failed to show that Johnstown infringed on "a legally protected interest." 30 F.4th 584, 598 (6th Cir. 2022) (Batchelder, J., dissenting) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). This was so because the Rice family's purported injury, an abridgment of a supposed property right to a rezoning of land by an adjacent municipality, does not exist in fact or law. I adhere to that position.

If we get to the merits, as the majority does, I agree that their analysis is correct. As the majority accurately states, a *Eubank* claim requires "a deprivation of 'life, liberty, or property.'" *Ante*, at 4-5 (quoting U.S. CONST. amend. XIV). For the same reasons I espoused in *Rice I*, 30 F.4th at 598-99, and recounted by the district court, the Rice family was not deprived of property at all because they have no property interest in a foreign (albeit adjacent) municipality rezoning property that is not in that municipality's jurisdiction. That contention alone dispenses with the case. Unlike the majority, I would reach that question.

Because, however, the majority is correct both as to the judgment and in its analysis of the delegation hallmarks of a *Eubank* claim, I concur with the opinion in full, save its reluctance to reach the threshold property interest question.